[Civ. No. 3350.   Second Appellate District, Division One.—October 5, 1920.]

## G. DEMATEIS, Appellant, v. FRANK VEZU, Respondent.

[1] NEGOTIABLE INSTRUMENTS — DISHONOR OF CHECK — WHEN NOTICE TO DRAWER EXCUSED.—The drawee of a check is not under obligation to give the drawer thereof notice of dishonor of the check, where the drawer had no account with the bank on which the check was drawn.

[2] CONTRACTS—RESCISSION—RETURN OF DISHONORED CHECK.—Where a contract for the sale of grapes is rescinded by the seller because the check given to him by the buyer at the time of the execution and delivery of the contract was drawn on a bank in which the buyer had no account, such rescission does not fail merely because at the time thereof the seller does not restore or offer to restore the dishonored check, it being sufficient for the seller to

bring such check into court at the time he is sued on the contract and ask that it be returned to the drawer.

[3] ID.—FAILURE OF BUYER TO PAY FIRST INSTALLMENT—RIGHT OF SELLER TO REPUDIATE.—Where a buyer fails or refuses, without sufficient cause, to make payment of the first installment of the purchase price of the article contracted to be purchased, the seller is justified in repudiating the contract.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank C. Prescott and Prescott & Prescott for Appellant.

Ralph E. Swing for Respondent.

CONREY, P. J.—On the fifteenth day of April, 1918, the plaintiff, as party of the second part, and the defendant, as party of the first part, entered into a contract in writing which provided "that for and in consideration of the amount of $500, the receipt whereof is hereby acknowledged by the party of the first part," the party of the first part agreed to sell to the party of the second part, and the party of the second part agreed to buy a specified quantity and quality of grapes at a stated price per ton. "Payments are to be made as follows: The amount of One Thousand Dollars is payable on commencement of cutting and picking of the grapes; balance to be paid, half of the amount of grapes picked payable after same has been delivered, and the other half respectively. Balance due is payable when all the grapes are delivered." In his complaint, which was filed on the third day of July, 1918, the plaintiff alleged facts showing an attempted rescission of the contract by the defendant; alleged that the grapes would be ready for picking in the month of August, 1918, and not until then; alleged facts on which he relied as entitling him to specific performance; and demanded a decree of specific performance, or in case such performance be impossible, that plaintiff have judgment against the defendant in the sum of fifteen thousand dollars damages. Judgment was entered in favor of the defendant, and the plaintiff appeals therefrom.

The controversy centers about the circumstances attending the nonpayment of plaintiff's check for the sum of five hundred dollars, delivered by the plaintiff to the defendant at the time of the execution and delivery of the contract. The check was drawn in favor of the defendant and signed by the plaintiff personally. The plaintiff did not have at that time, nor at any of the times in question here, any personal account with the Farmers & Merchants National Bank, on which bank said check was drawn. He was in fact the president, and according to the evidence, was the owner of all the stock of a corporation known as the Italian-American Vineyard Company, which corporation did have an account in said bank. But there is nothing in the contract, nor in any of the testimony concerning the transactions between the parties in connection with the making of the contract, tending to show that the sale was other than a sale of the grapes by the defendant to the plaintiff personally, or that the plaintiff agreed to or was expected to receive any check or money from the Italian-American Vineyard Company. Defendant having deposited said check with another bank, the same was in due course presented to the drawee bank, which refused payment. The court found: "That notice of the nonpayment of said check was received by defendant on or about the twenty-first day of April, 1918; that defendant, believing that said plaintiff would call and make said check good; waited until the ninth day of May, 1918, for said plaintiff to do so; that on the said ninth day of May, 1918, notice of the dishonor of said check was given to plaintiff; that thereafter defendant waited until the sixteenth day of May, 1918, for the plaintiff to make said check good; that said plaintiff not having made said check good and not having paid said consideration for said contract the said defendant on May 16, 1918, rescinded said contract and caused notice of such rescission to be given plaintiff." The evidence is sufficient to sustain this finding, except possibly the finding that on the ninth day of May, 1918, notice of the dishonor of the check was given to the plaintiff. The only evidence of such notice on that day is found in the proved fact that on that day the plaintiff was informed by the wife of the defendant that payment of the check had been refused. In connection with defendant's rescission of

the contract and at the time thereof, he did not offer to return to the plaintiff said dishonored check, but at the commencement of the trial of this action the defendant produced the check in court and asked that his indorsement thereon be canceled and that the check be returned to the plaintiff. The plaintiff refused to receive said check, and it was filed with the clerk of the court and there remains in evidence. On the seventeenth day of June, 1918, the plaintiff tendered to the defendant the sum of five hundred dollars in lawful money of the United States, in payment of the five hundred dollars consideration mentioned in said contract, and then and there demanded that defendant carry out said contract, which tender and demand were then and there refused by the defendant. The court found (and appellant does not attack this finding), "that thereafter, to wit, on the twenty-fifth day of June, 1918, with the knowledge of plaintiff, defendant sold his crop of black grapes herein referred to, to the Italian Vineyard Company; that at said time said plaintiff was the owner of 131 shares of the capital stock of the said Italian Vineyard Company; that thereafter, to wit, on the third day of July, 1918, plaintiff herein instituted this action." It should be noted that the Italian Vineyard Company mentioned in this finding is a different corporation from the Italian-American Vineyard Company. The court found and the evidence proves that at the time of entering into the contract the plaintiff did so for the purpose of procuring said grapes for the use of the Italian-American Vineyard Company, and intended that said five hundred dollar check should be drawn against the account of that company, which company had on deposit with the bank money sufficient to meet the check; but the defendant did not know of such intention on the part of the plaintiff and had no means of acquiring such knowledge. The court further found as follows: "It is true that the market price of grapes advanced after the fifteenth day of April, 1918, but it is not true that such advance in said market price of grapes was the cause of defendant rescinding said agreement, but the said defendant in rescinding said agreement acted in good faith and without regard to the price of such grapes and without any intention to take any undue advantage of plaintiff, and it is true that defendant did, prior to the rescission of said contract, give

plaintiff an opportunity to pay the said consideration for
said contract and that said plaintiff did not avail himself
of such opportunity."

The foregoing is not a statement of all of the issues ten-
dered by the pleadings and determined by the decision of
the trial court, but is sufficient to exhibit those elements of
the case which are brought to our attention by appellant
in the statement by his counsel of the grounds of appeal
relied upon by him.

Appellant contends that the mistake in the check's signa-
ture was made by defendant's agent under circumstances
that the defendant himself insisted upon. Assuming that
the witness Castera, by whom the check was written out,
was the agent of defendant, no negligence on the part of
such agent is established by the evidence. The error, if
any, was solely in the signature of the check, which signa-
ture was placed thereon by the plaintiff. If the plaintiff
intended to draw this check on the account of the Italian-
American Vineyard Company that fact appears to have
been known to him alone.

[1] Appellant next contends that he was entitled to
notice of dishonor of the check in regular and due course,
as upon any other bill of exchange, and that such notice
was not given. Section 3195 of the Civil Code provides as
follows: "Notice of dishonor is not required to be given to
the drawer in either of the following cases: . . . 4. Where
the drawer has no right to expect or require that the
drawee or acceptor will honor the instrument." Since the
plaintiff had no account with the bank on which the check
was drawn, he had no right to expect or require that the
same would be paid by that bank. The defendant, therefore,
was not under obligation to give to the plaintiff any notice
of dishonor of such check.

Appellant next contends that the attempted rescission of
the contract did not comply with the conditions required
by section 1691 of the Civil Code, in that defendant did not
rescind promptly upon discovering the facts which he
claims entitle him to rescission, and, further, in that he did
not restore or offer to restore to plaintiff the said check.
Appellant claims that the attempted rescission was an act of
bad faith prompted by the fact that between the date of the
contract and the date of rescission there was a great increase

in the market price of black grapes. It is true that the market price of grapes advanced within the specified period of time; but this fact is not alone sufficient to compel a finding that such advance in market price was the cause of defendant's rescission of the contract. The court found that the defendant acted in good faith, and that finding is well warranted by the evidence, which tends to prove that defendant rescinded the contract for the very definite and sufficient reason that the check, which he had received on the positive assurance that it was good and in consideration whereof he had delivered the contract, had been dishonored and had so remained for a period of nearly one month.

[2] The rescission of the contract does not fail merely because at the time thereof defendant did not restore or offer to restore the dishonored check to the plaintiff. "There are exceptional cases where restoration or an offer to restore before suit brought is not necessary—as, for instance, where the thing received by the plaintiff is of no value whatever to either of the parties; or where the plaintiff has merely received the individual promissory note of the defendant; or where the contract is absolutely void; or where it clearly appears that the defendant could not possibly have been injuriously affected by a failure to restore." (*Kelley* v. *Owens*, 120 Cal. 502, [47 Pac. 369, 52 Pac. 797]; *California etc. Co.* v. *Schiappa-Pietra*, 151 Cal. 732, 738, [91 Pac. 593].) In this case, under the facts as shown, the check was of no value and the plaintiff could not possibly have been injuriously affected by its retention in defendant's hands until the time when it was produced in court. Moreover, it has been held that on rescission of a contract of sale, where the defendant vendee had given his note as part of the original transaction, it was sufficient for the vendor to offer to surrender the note, even after action brought, and bring it into court to be canceled. (*Coghill* v. *Boring*, 15 Cal. 213; *Whyte* v. *Rosencrantz*, 123 Cal. 634, 642, [69 Am. St. Rep. 90, 56 Pac. 436].) Under this rule, it was sufficient in this case that the defendant brought into court the plaintiff's check and left it there for cancellation.

[3] Finally, it is claimed by appellant that the payments provided for by the contract were in separate installments

and that failure as to one of these alone would not constitute a breach of the entire contract. We will assume (although it is not entirely clear from the reading of the contract) that the five hundred dollars mentioned at the beginning of the contract was to be an installment of the purchase price and not a separate consideration for the vendor's entry into the contract; nevertheless, we are of the opinion that the failure or refusal, without sufficient cause, by the buyer to make that payment, justified a repudiation of the contract by the seller. (*Los Angeles Gas etc. Co.* v. *Amalgamated Oil Co.*, 156 Cal. 776, 781, [106 Pac. 55]; *California Sugar etc. Agency* v. *Penoyar,* 167 Cal. 274, 280, [139 Pac. 671].)

Plaintiff's notice of appeal is a notice of appeal not only from the judgment, but also from the order denying his motion for a new trial of the action. As there is not any right of appeal from an order denying a motion for a new trial (Code Civ. Proc., sec. 963), that appeal is dismissed.

The judgment is affirmed.

Shaw, J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 29, 1920, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 2, 1920.

All the Justices concurred.