FRANCIS J. KIRBY ET AL., APPELLEES, V. CLIFFORD W. BERGFIELD ET AL., APPELLANTS.
182 N. W. 2d 205

Filed December 23, 1970. No. 37592.

Mason, Knudsen, Berkheimer & Endacott and Reddish, Fiebig & Curtiss, for appellants.

Albert W. Crites of Crites & Shaffer, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

This is an action for specific performance of a contract for the purchase and sale of real estate. The trial court entered a decree ordering the specific performance of the contract and the defendant sellers have appealed.

Following negotiations initiated by two representatives of the sellers several weeks before, the parties reached an oral agreement for the purchase and sale of a 9,040-acre ranch located in Dawes County, Nebraska. The following day, August 8, 1967, the written contract was prepared by the sellers' attorney, and signed by all of the parties.

The total purchase price was $352,560, "payable in manner following: $10,000.00 down payment, receipt of which is hereby acknowledged, and the balance of $342,560.00 by assuming and paying promptly when due a first mortgage of the (sellers) to the John Hancock Insurance Co. in the sum of $172,000.00; $20,000.00 cash on or before the 1st day of November, 1967, and the balance of $150,560.00 payable in ten years." This balance carried interest of 5½ percent from November 1, 1967, and was payable in semiannual installments with the balance due at the end of 10 years. The $150,560 balance was to be represented by a promissory note of the purchasers secured by a second mortgage on the premises.

The 1967 taxes were to be prorated as of November 1, 1967, but possession of the premises was to be delivered to the buyers on December 1, 1967.

The contract provided that contemporaneously with the execution of the agreement, a warranty deed to the premises would be prepared and placed in escrow with the Bank of Chadron, together with a copy of the con-

tract. The escrow conditions incorporated into the contract provided that the deed would be delivered to the buyers upon the sellers acknowledging receipt of the $20,000 payable November 1, 1967, and the execution of the note and second mortgage for $150,560 by the purchasers.

The escrow terms and conditions also provided that in the event of a default by the purchasers in making the $20,000 payment due on November 1, 1967, and delivering their note and mortgage, all items in escrow were to be returned to the sellers on their demand after notice to the purchasers by certified mail. Terms of the escrow could be changed only by written agreement of all parties.

The contract also provided: "It is mutually understood and agreed that time is of the essence of this agreement and that in the event of any payment, either of principal or interest, remaining unpaid for a space of thirty (30) days after the same shall become due, or in case of failure of the second parties to make due payment of all sums due the John Hancock Insurance Company, or any breach of any other covenant herein contained, this Contract shall, at the option of the first parties, be forfeited and determined and the second parties shall forfeit all payments whatsoever made hereunder to the first parties, and the first parties shall have immediate right to re-entry and take possession of the lands and premises aforesaid."

Kirby's $10,000 check for the down payment drawn on the First National Bank of Omaha, dated August 8, 1967, was returned for insufficient funds. A cashier's check in that sum was deposited with the defendants' bank about August 12, 1967, and was accepted by the defendants as the down payment. The deed and a copy of the contract were never placed in escrow.

On November 1, 1967, the agreed closing date, the parties met in Chadron and drove together to Crawford. Mrs. Bergfield wanted to be positively assured that

Kirbys had the money for the $20,000 payment. The testimony is conflicting as to what the Bergfields were told. Kirbys maintain that Bergfields were specifically told to call Kirby's banker, Mr. Hugh Campbell, at the Bank of Bellevue, Nebraska, if they had any doubts about the check. Bergfields testified that Mr. Kirby told them to call "his bank," "the Bank of Bellevue," or "his banker." The Bergfields and their attorney all deny that the banker's name was mentioned.

The final closing was completed in the office of the defendants' attorney in the early evening of November 1, 1967. All necessary documents were executed by both parties. All of the documents except the $20,000 check were retained by the defendants' attorney until Bergfields could ascertain whether or not the check was good.

The following morning, Bergfields went to the Bank of Chadron and requested that Mr. Bare, the cashier, call the Bank of Bellevue to ascertain if there were sufficient funds in the Kirby account to cover the $20,000 check. Mr. Bare called the Bank of Bellevue and asked for the bookkeeping department. He gave the name of the account, the account number, and the amount of the check to a lady there and asked her if there were sufficient funds on hand to cover it. After a time, she returned to the telephone and indicated that there was not money in the account to cover the check. The Bergfields then continued to hold the check. It was never presented at the Bellevue Bank for payment. At the Bergfields' order, their attorney tore their signatures off the deed which was in his possession.

Sometime between November 7 and 10, 1967, Mrs. Bergfield received a call from Mr. Kirby telling her to "send the check through." She refused to do so and told him they were not going to deal with him at all. On November 24, 1967, a cashier's check for $20,000 was issued by the Bank of Bellevue. On November 26, 1967, Mr. Kirby again called Mrs. Bergfield and told her he had the cashier's check available. She again refused to deal

with him. On November 30, 1967, Kirby delivered the cashier's check to an attorney in Chadron and instructed him to write to the Bergfields and advise them that the money was available and he was prepared to settle the matter. His attorney did so by registered letter dated November 30, 1967. The Bergfields refused to accept delivery of the letter and it was returned unclaimed. On about December 26, 1967, Mr. Kirby's attorney delivered a copy of the contract and the $20,000 cashier's check to the Bank of Chadron, the escrow agent named in the contract. The Chadron Bank returned the cashier's check on January 2, 1968.

It was stipulated that there were insufficient funds in the Kirby account at the Bank of Bellevue from November 1, 1967, through December 31, 1967, to cover the $20,-000 check. It is also undisputed that before November 1, 1967, Mr. Kirby had made arrangements with Hugh Campbell, president of the Bank of Bellevue, to finance the $20,000 payment. Campbell testified that he individually made a verbal agreement with Mr. Kirby and told him that he would arrange to take care of the check when and if it was presented to the Bank of Bellevue for payment. Campbell alerted the people in the bookkeeping department as to the arrangement he had with Mr. Kirby.

After some unsuccessful attempts at settlement, all of which were refused by the defendants, this action for specific performance was filed on February 29, 1968.

The appellants' position is that the telephone call to the bookkeeper of the Bellevue bank was a presentment and demand for payment of the check, or that presentment was excused under the terms of the Uniform Commercial Code. Both parties rely upon interpretations based upon the technical provisions of the Code relating to presentment. Presentment is primarily necessary to charge secondary parties, none of whom are involved in this case. See § 3-501, U. C. C.

Section 3-504, U. C. C., defines presentment as: "A

demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder." That section authorizes presentment "by mail"; "through a clearing house"; or "at the place of * * * payment specified in the instrument"; or "* * * at the place of business * * * of the party to * * * pay." This section does not contemplate that the presentment of a personal check drawn on a bank may be made by telephone. It seems obvious that payment of a personal check or refusal of payment and dishonor by the drawee bank necessitate exhibition or delivery of the instrument under current banking practices. The telephone call in this case constituted an inquiry as to circumstances which might indicate whether the check would or would not be paid upon future presentment in due course. It was not a presentment and demand for payment envisioned by section 3-504, U. C. C. The situation here did not excuse presentment under section 3-511, U. C. C. Neither did it constitute refusal of payment and dishonor.

The basic issue here is what effect the delivery and acceptance of the $20,000 check had upon the rights of the parties under the contract. Section 3-802, U. C. C., covers this situation. That section provides in part: "(1) Unless otherwise agreed where an instrument is taken for an underlying obligation * * * the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; * * *." The draftsmen's comment No. 3 under this section states: "It is commonly said that a check or other negotiable instrument is 'conditional payment.' By this it is normally meant that taking the instrument is a surrender of the right to sue on the obligation until the instrument is due, but if the instrument is not paid on due presentment the right to sue on the obligation is 'revived.' * * *."

Here the sellers' right to terminate the contract and impose a forfeiture upon the purchasers was suspended

until the check was presented for payment and dishonored.

Both parties rely upon the case of Willan v. Farrar, 174 Neb. 826, 119 N. W. 2d 686, on rehearing, 176 Neb. 1, 124 N. W. 2d 699. Even aside from the fact that that case arose prior to the effective date of the Uniform Commercial Code, this court also pointed out that equitable rules as to relieving against forfeitures did not apply to an extension of an "unless" oil and gas lease. In the Willan case, this court cited with approval State ex rel. Davis v. Farmers State Bank, 112 Neb. 597, 200 N. W. 173. In that case, we said: "A court of equity is always reluctant in the last degree to make a decree which will effect a forfeiture." That principle clearly applies here.

Even aside from issues involving the check, the contract itself, reasonably construed, permits termination and forfeiture only in the event that any payment remained unpaid for 30 days after it was due. In addition, equitable rules against forfeiture apply. The rule of construction also applies, which directs that uncertain or ambiguous provisions in a contract be construed against the party who prepared it.

In connection with the escrow terms and conditions, the contract provided specifically that in the event of a default in making the $20,000 payment due on November 1, 1967, and delivering the note and mortgage for the balance of the purchase price: "* * * after notice to the second parties by Certified Mail * * *, all items in escrow shall be returned to the first parties on their demand."

The provisions dealing with default in any payments appear on the last page of the contract. There it is stated: "* * * that in the event of any payment, either of principal or interest, remaining unpaid for a space of thirty (30) days after the same shall become due, * * *," the contract at the option of the sellers shall be forfeited and determined and all payments made by

the purchasers shall be forfeited to the sellers. Under the applicable rules of construction and the structure of the contract provisions for payment of the purchase price, "any payment" would include the $20,000 payment due November 1, 1967. At least twice within the 30-day period, the purchasers made a valid tender and offer of performance. At least twice during the same 30-day time, sellers refused to carry out the contract and advised the purchasers they would not deal with them at all. Under such circumstances, subsequent offers to perform would have been superfluous and futile.

The trial court found that the purchasers were entitled to a decree of specific performance of the contract. The judgment of the trial court was correct and is affirmed.

AFFIRMED.