[Civ. No. 17688. Fourth Dist., Div. Two. Feb. 10, 1978.]

CANAL-RANDOLPH ANAHEIM, INC., Plaintiff and Appellant, v. JAMES B. WILKOSKI et al., Defendants and Respondents.

**COUNSEL**

Millar & Heckman and Richard W. Millar, Jr., for Plaintiff and Appellant.

James E. Wilkoski, in pro. per., Scott, Persinger & Muehl, James P. Persinger and Brian R. Meek for Defendants and Respondents.

**OPINION**

**KAUFMAN, Acting P. J.**—In this unlawful detainer action, after trial to the court, judgment, including awards of attorney fees, was rendered in favor of defendants. Plaintiff appeals.

Plaintiff Canal-Randolph Anaheim, Inc. (plaintiff) is the owner and operator of a 10-story office building in Anaheim. On December 21, 1971, plaintiff leased a suite of offices known as suite 1014 on the top floor of the building to a law firm known as Maher, Moore, Rheinheimer & Jones (Maher firm) under a written 10-year lease (Maher lease).

In about January 1974, defendant James E. Wilkoski, who is an attorney, became associated in some way with the Maher firm as the result of which he occupied a portion of suite 1014. About the same time, Christian Van Deusen, then a law clerk, now an attorney, also became associated with the Maher firm in some way and thus occupied a portion of suite 1014. One of the Maher partners resigned, another died and, apparently, by July 1974, the Maher firm was in the process of winding up. On about July 18, 1974, Wilkoski and Van Deusen formed a professional law corporation known as Wilkoski & Van Deusen, A Professional Corporation. There were negotiations between representatives of plaintiff and Wilkoski and Van Deusen concerning their corporation's tenancy of all of suite 1014. These negotiations apparently resulted in a letter agreement of some kind dated July 19, 1974.[1]

In August, September and October 1974, rent for suite 1014 in the amount of $1,225 per month was paid plaintiff by checks drawn on the checking account of Wilkoski & Van Deusen, A Professional Corporation, and its trust account. The corporation also paid charges made by plaintiff for keys and directory services.

In October 1974, Van Deusen terminated his relationship with Wilkoski and vacated suite 1014. Thereafter, the professional corporation was known as J. E. Wilkoski, A Professional Corporation (the corporation). Further negotiations were had between plaintiff and the corporation and Wilkoski. At some point plaintiff's rental agent mailed to the corporation a "Lease Addendum" document containing a signature line for the corporation as lessee by Wilkoski as president purporting to be effective as of August 1, 1974. The corporation, however, never executed this document. Nevertheless, it purported to occupy suite 1014, and Wilkoski in some capacity continued physically to occupy a portion of the suite.

Checks purportedly for rent for suite 1014 in the monthly amount of $1,225 were delivered by corporation to plaintiff for a good many months, apparently for each month from November 1974 through November 1975, excluding June 1975. The checks from November 1974 to and including May 1975 were drawn on the corporation's checking account at Bank of America. Subsequent checks were drawn on the corporation's checking account at El Camino Bank. Plaintiff did not

---

[1]Strangely, this letter agreement was not introduced into evidence and is not included in the record on appeal.

endorse or otherwise attempt to negotiate these checks or present them for payment. The checks were still in plaintiff's possession at the time of trial and were introduced into evidence. Although the corporation and Wilkoski must have been aware from the corporation's monthly bank statements in evidence that the checks had not been cashed, neither of them were notified of any intention on the part of plaintiff to reject the checks, and, of course, the checks were never returned by plaintiff. After November 1975 no further checks for rent were delivered to plaintiff.

On or about November 17, 1975, plaintiff caused to be prepared a three-day notice to pay rent or quit asserting as due the sum of $17,703.81. This sum was purportedly calculated on the basis of the Maher lease and included monthly rent of $1,225 for the months of November 1974 through November 1975, interest on unpaid rents as provided in the lease at the rate of 10 percent per annum in the amount of $792.02 and escalation charges provided for in the lease calculated at $985.79. The notice was directed to a number of partners of the old Maher firm, Wilkoski, a number of other individuals then occupying portions of suite 1014 and "all other lessees and tenants in possession." Whether or not this notice was properly served upon anyone is apparently disputed.

On December 3, 1975, plaintiff commenced this action for unlawful detainer against the partners of the Maher firm, Wilkoski and other persons in possession of portions of suite 1014. Although not originally named as a defendant, the corporation was subsequently served as a Doe. The complaint was based on and incorporated by reference the November 17, 1975, three-day notice to pay rent or quit and contained allegations consistent with the notice. The action was eventually dismissed as to all defendants other than Wilkoski and the corporation, who answered separately. Following trial from November 2 through November 5, 1976, the court orally indicated a decision in favor of defendants, taking the question of attorney fees under submission. On December 21, 1976, judgment was rendered in favor of defendants including awards of attorney fees to the corporation in the amount of $5,500 and to Wilkoski in the amount of $2,500.

At plaintiff's request the court rendered findings of fact and conclusions of law. As we shall see, the findings resolved very few questions, presumably because the court concluded the corporation's delivery of rent checks to plaintiff suspended its obligation to pay rent by virtue of Commercial Code section 3802, subdivision (1)(b) and, therefore,

plaintiff's three-day notice to pay rent or quit was defective because it included within the amount claimed due the rent for many months for which rent checks had been delivered to plaintiff by the corporation.

For the reasons hereinafter discussed we have concluded the judgment must be reversed and the case remanded for additional findings.

*Attorney Fee Awards*

■ The attorney fee awards in favor of the corporation and Wilkoski are not supported by the findings. The Maher lease contains a reciprocal provision for the recovery of reasonable attorney fees by the prevailing party, whether lessor or tenant, in any litigation between the tenant and the lessor. However, there is no finding that either Wilkoski or the corporation was or is a party to that lease. Wilkoski has consistently maintained that he is not a party to the lease, and the trial court specifically refused to make a finding (erroneously denominated a conclusion of law) that the lease was assigned to the corporation. In the absence of a statutory provision or contractual agreement to the contrary, attorney fees are not recoverable from the opposing party. (Code Civ. Proc., § 1021; *Reid* v. *Valley Restaurants, Inc.,* 48 Cal.2d 606, 610 [311 P.2d 473]; *Genis* v. *Krasne,* 47 Cal.2d 241, 246 [302 P.2d 289].)

The contention that the attorney fee awards are authorized by Civil Code section 1717 is baseless. That code section was enacted in 1968 to establish mutuality of remedy in respect to recovery of attorney fees in situations where the contract between the parties contains a provision for the recovery of attorney fees only by one party. (*Arnold* v. *Browne,* 27 Cal.App.3d 386, 398 [103 Cal.Rptr. 775]; *Boliver* v. *Surety Co.,* 72 Cal.App.3d Supp. 22, 28 [140 Cal.Rptr. 259]; Review of Selected 1968 Code Legislation (Cont.Ed.Bar) pp. 35-36.) It thus has no application to the case at bench in which the provision in the lease itself is already reciprocal.

■ Moreover, even where a contractual provision for recovery of attorney fees is one-sided and Civil Code section 1717 applies, recovery of and liability for attorney fees is restricted to parties to the contract. (*Arnold* v. *Browne, supra,* 27 Cal.App.3d at pp. 398-399; *Boliver* v. *Surety Co., supra,* 72 Cal.App.3d Supp. at p. 29.) To the extent the decision in *Babcock* v. *Omansky,* 31 Cal.App.3d 625 [107 Cal.Rptr. 512], indicates the contrary, it is incorrect. In relevant part Civil Code section 1717

reads: "In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, *whether he is the party specified in the contract or not,* shall be entitled to reasonable attorney's fees . . . ." (Italics added.) The court in *Babcock* erroneously concluded the italicized language referred to a person not a party to the contract. It does not. The introductory clause sets forth the predicate for applicability of the section, to wit, a contract providing for recovery of attorney fees by only one of the parties to the contract. The language "the party specified in the contract" refers to the party to the contract authorized by the terms of the contract to recover attorney fees should he prevail. "[T]he prevailing party, whether he is the party specified in the contract or not" means the prevailing party, whether or not he is the party authorized by the terms of the contract to recover attorney fees should he prevail. In either case, the reference is to the party to the contract who prevails. It was the purpose of the statute to make unilateral attorney fee provisions in a contract reciprocal, not to extend the benefit of a contractual provision for the recovery of attorney fees to a person not a party to the contract. (See *Arnold* v. *Browne, supra,* 27 Cal.App.3d at pp. 398-399; *Boliver* v. *Surety Co., supra,* 72 Cal.App.3d Supp. at pp. 28-29.) Whether the result reached in *Babcock* might be sustained on some other basis is not a matter before us.[2]

The argument that, since plaintiff would have been entitled to recover attorney fees from Wilkoski and the corporation had it prevailed, it should in fairness be liable to them for attorney fees since they have prevailed is founded on a false premise. Even if it prevailed, plaintiff would not be entitled to an award of attorney fees against any defendant unless it proved that defendant was or is a party to the Maher lease or some other contract providing for recovery of attorney fees. (*Boliver* v. *Surety Co., supra,* 72 Cal.App.3d Supp. at pp. 28-29.)

---

[2]The court in *Boliver* v. *Surety Co., supra,* 72 Cal.App.3d Supp. at page 29 explains the result in *Babcock* on the theory that the wife who was awarded fees in *Babcock* was sued on allegations that, although not a signatory to the contract, she was liable on the contract because of a joint venture between her and her defendant husband who was a signatory. In the case at bench, although plaintiff prayed for an award of attorney fees against all defendants, neither Wilkoski nor the corporation were sued as a party to the Maher lease. The defendants Moore, Rheinheimer and Jones were specifically alleged to be the "Lessee Defendants." Wilkoski and other defendants were referred to as "Tenant Defendants" with respect to whom it was alleged only that they occupied the premises and, on information and belief, that such occupation was "pursuant to an agreement with the lessee defendants, the nature, date and extent of which is unknown to plaintiff."

*Commercial Code Section 3802*[3]

Commercial Code section 3802 provides in pertinent part:

"(1) Unless otherwise agreed where an instrument is taken for an underlying obligation

". . . . . . : . . . . . . . . . . . . .

"(b) . . . the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. . . ."

Plaintiff urges that even if the court was correct in finding section 3802 applicable, its effect is not to discharge the underlying obligation but only to suspend it and plaintiff was not required to deduct from the amount claimed due in its notice the amount of rent as to which the obligation to pay was suspended.

Plaintiff is correct that section 3802 does not discharge the underlying obligation. Paragraph 3 of the California Uniform Commercial Code comment to section 3802 reads: "It is commonly said that a check or other negotiable instrument is 'conditional payment.' By this it is normally meant that taking the instrument is a surrender of the right to sue on the obligation until the instrument is due, but if the instrument is not paid on due presentment the right to sue on the obligation is 'revived.' Subsection (1)(b) states this result in terms of suspension of the obligation. . . ."

Discharge of a party to a negotiable instrument is dealt with by section 3601 which provides that discharge on account of unexcused delay in presentment is governed by section 3502. Section 3502, subdivision (1)(b) provides that where the drawee is a bank and unexcused delay in presentment results in a loss of funds to cover the instrument because of insolvency of the drawee bank, the drawer may discharge his liability by written assignment of his rights against the drawee bank, "but such drawer . . . is not otherwise discharged." This accords with California law prior to adoption of the Commercial Code that the drawer of a check was not discharged by nonpresentment or unreasonable delay in presentment except to the extent he suffered loss or damage therefrom. (See *Zinn* v.

---

[3]All further statutory references are to the Commercial Code unless otherwise indicated.

*Fred R. Bright Co.,* 271 Cal.App.2d 597, 602-604 [76 Cal.Rptr. 663, 46 A.L.R.3d 1317].)

■ We cannot agree, however, with the conclusion that even if section 3802 is applicable, plaintiff could properly include in the amount claimed due in its three-day notice the rent as to which the obligation to pay was suspended. The unlawful detainer statute requires as a prerequisite to institution of an action for recovery of possession the service of a three-day notice to pay rent or quit "stating the amount which is due." (Code Civ. Proc., § 1161, subd. 2.) There are numerous cases holding the landlord may not prevail in an unlawful detainer action unless the amount stated in the notice is the exact amount due. (E.g., *Johnson* v. *Sanches,* 56 Cal.App.2d 115, 116-118 [132 P.2d 853]; *Dertiman* v. *Almey,* 92 Cal.App.2d 724, 725-726 [207 P.2d 615]; *Werner* v. *Sargeant,* 121 Cal.App.2d 833, 837 [264 P.2d 217]; see *Baugh* v. *Consumers Associates, Ltd.,* 241 Cal.App.2d 672, 674-675 [50 Cal.Rptr. 822]; cf. *J. B. Hill Co.* v. *Pinque,* 179 Cal. 759, 761-763 [178 P. 952, 3 A.L.R. 669]; *Gage* v. *Bates,* 40 Cal. 384, 385; but cf. *Budaeff* v. *Huber,* 194 Cal.App.2d 12, 17-18 [14 Cal.Rptr. 729].)[4] The California Uniform Commercial Code comment to section 3802 previously quoted makes clear that suspension of the obligation means a surrender of the right to sue on the obligation so long as the suspension remains in effect. If section 3802 was applicable, therefore, the amount of the rent for which the corporation had delivered checks to plaintiff, although not paid, was not "due," and should not have been included in the amount claimed due in the notice.

■ However, plaintiff is correct that the findings do not support the trial court's conclusion (included in the findings and conclusions both as a finding and a conclusion) that section 3802 was applicable and operated to suspend the corporation's obligation to pay rent for the months of November 1974 through November 1975.

---

[4]It may be this rule should be reexamined. It apparently derives from the rule at common law that a demand for payment of the exact sum was a necessary prerequisite to a forfeiture of a lease for nonpayment of rent. (*J. B. Hill Co.* v. *Pinque, supra,* 179 Cal. at pp. 761-762; *Gage* v. *Bates, supra,* 40 Cal. at p. 385.) The modern justification for the rule would appear to be fairness to the tenant. (*Budaeff* v. *Huber, supra,* 194 Cal.App.2d at pp. 17-18.) Where the amount stated in the notice is incorrect but trial discloses a substantial amount of rent owing, fairness to both the tenant and the landlord could be achieved by entry of a judgment in favor of the tenant on condition that he pay the past-due rent within a specified period of time. Multiplicity of litigation could thereby be avoided. The present rule does not appear to serve the need for conserving judicial resources occasioned by the law explosion.

In the first place, the operation of section 3802 to suspend the underlying obligation until due presentment of a check is expressly conditioned on there being no agreement between the parties to the contrary. Plaintiff contended at trial it was pursuant to an agreement between the parties that it held the checks delivered to it by the corporation without negotiating them or presenting them for payment. There was some evidence to that effect, and the court should have made a finding whether or not there was such an agreement.

Secondly, section 3802 is applicable only "where an instrument is taken for an underlying obligation." The trial court did not find that plaintiff had taken the checks for the underlying rent obligation. It found only that the corporation "delivered"[5] rent checks to plaintiff and that plaintiff "held" the checks until the time of trial. Plaintiff contends that "taken for an underlying obligation" means something more than simple manual tradition; it imports delivery by the debtor with the intention of paying the underlying obligation and acceptance by the creditor of the instrument as conditional payment of the obligation or, perhaps more properly, conditional acceptance of the instrument as payment. We agree.

The very language "where an instrument is taken for an underlying obligation" imports an exchange which, in turn, imports an acceptance by the creditor. As indicated in the portion of paragraph 3 of the Uniform Commercial Code comment to section 3802 quoted previously, section 3802 states in terms of suspension of obligation the notion that a check constitutes "conditional payment." (See also *Stream* v. *CBK Agronomics, Inc.* (1974) 79 Misc.2d 607 [361 N.Y.S.2d 110, 113].) To constitute conditional payment it would seem a check must be delivered by the debtor with the intention it be such and accepted by the creditor as such. (See *Stream* v. *CBK Agronomics, Inc., supra.*) Paragraph 4 of the California code comment to section 3802 quotes from a report of a section of a State Bar subcommittee describing the effect of section 3802 on California law as follows: " 'This section purports to codify existing case law which holds that, unless it is expressly agreed that a negotiable instrument is accepted in payment of a debt, *acceptance* of the instrument merely postpones time for payment. Upon dishonor, an action may be maintained on the original debt.' " (Italics added.)

---

[5]The court refused to find the corporation "tendered" the rent checks to plaintiff, substituting the word "delivered" for the word "tendered" used in the proposed findings.

We conclude the language in section 3802 "where an instrument is taken for an underlying obligation" refers to a situation in which the debtor has delivered an instrument with the intention that it constitute conditional payment for the underlying obligation and the creditor has accepted it as conditional payment for the underlying obligation. The trial court's findings that the corporation delivered the checks to plaintiff and that plaintiff held the checks are insufficient to support the court's conclusion that section 3802 was applicable.

Thirdly, and most importantly, the provision in section 3802, subdivision (1)(b) suspending the underlying obligation until the instrument (check) is presented for payment is obviously operative only when and so long as presentment for payment is required. Section 3511, subdivision (2) provides in relevant part: "(2) Presentment . . . is entirely *excused* when [¶] (a) The party to be charged has *waived it* expressly or by implication either *before or after it is due;* or [¶] (b) Such party has himself dishonored the instrument or has countermanded payment or otherwise *has no reason to expect or right to require that the instrument be accepted or paid;* . . . ." (Italics added.)

These provisions are substantially similar to California law prior to adoption of the Commercial Code. (See Cal. Code com. to § 3511, pars. 3 & 4; *Cashman* v. *Harrison,* 90 Cal. 297, 303 [27 P. 283]; *Demateis* v. *Vezu,* 49 Cal.App. 453, 457 [193 P. 793].) In the *Demateis* case it was held that the drawer of a check on a bank at which he had no account had no right to expect or require the drawee bank to honor the instrument and that presentment was therefore excused. The *Cashman* case reached the identical result where the drawer of a bill of exchange knew the drawee had not yet received any funds with which to pay the instrument. (90 Cal. at pp. 300, 303.)

There was considerable evidence that corporation had insufficient funds on deposit with the drawee banks to pay the several checks as they were issued. There was also very strong evidence that at almost no time after the checks were issued did corporation maintain on deposit with the drawee banks sufficient funds to pay the checks should they be presented.[6] If the trial court found either of these facts true, it could

---

[6]For example, in April 1975, when approximately $7,850 in checks drawn on Bank of America had been issued, the balance of the corporation's checking account at Bank of America ranged from $238.20 on April 1 to $655.80 on April 9 and from $288.25 on April 24 to $651.49 on April 29. In October 1975 when checks totaling several thousands of dollars had been issued on the corporation's checking account at El Camino Bank, the

conclude that presentment was entirely excused under either subdivision (2)(a) or (b) of section 3511 and that section 3802, subdivision (1)(b) providing for suspension of the underlying obligation was inapplicable. (Cf. *Cashman* v. *Harrison, supra,* 90 Cal. at pp. 303-304; *Demateis* v. *Vezu, supra,* 49 Cal.App. at p. 457.)[7]

But the trial court made no findings resolving these questions. It made no finding at all as to the sufficiency of funds in the several accounts on which the checks were drawn after the date they were issued. It expressly rejected a proposed finding that ". . . the bank balances show that had each check been presented it would have been honored without incident." As to the sufficiency of funds at the time of issuance, it found that at the time each and every check was delivered to plaintiff, corporation "had sufficient funds in bank *accounts* to pay checks from November 1, 1974 through November 10, 1975." (Italics added.) This finding was apparently based on hotly disputed evidence that the corporation may have had funds equal to or in excess of the amount of each check as issued in bank accounts other than that upon which the check was drawn. It is of no consequence, of course, whether the corporation had funds on deposit in some other bank account; the question is whether when each check was issued, corporation had on deposit with the drawee bank sufficient funds for payment of the check. If not, in the absence of its having made other arrangements with the drawee bank for payment of the check, it had no reason to expect or

balance of its checking account at that bank ranged from $544.65 on October 1, to $94.17 on October 31. In November 1975 its balance in that account ranged from $251.30 on November 3 to $813.06 on November 28.

[7]Our conclusion is not inconsistent with *Kirby* v. *Bergfield* (1970) 186 Neb. 242 [182 N.W.2d 205]. *Kirby* involved an action for specific performance of a contract for the purchase of real property. The purchasers gave the sellers a $20,000 check. Although there were insufficient funds in the purchasers' account at the drawee bank to cover the check, the purchasers had made arrangements with the president of the bank to pay the check when it was presented for payment. The sellers did not actually present the check for payment. Rather they telephoned the bank and asked whether there were sufficient funds in the account for payment. They were told there were not. In affirming the judgment of the trial court, the appellate court held that the telephone call did not constitute presentment and that, in view of the arrangements that had been made with the president of the bank for payment of the check upon its presentment, presentment was not excused under section 3511 of the Uniform Commercial Code. We quite agree. In *Kirby,* it could not be said the purchasers had "no reason to expect or right to require that the instrument be accepted or paid." Here, of course, there is no evidence that, aside from keeping sufficient funds on deposit in the accounts on which the several checks were drawn, the corporation or Wilkoski made any arrangements with the drawee banks for payment of the checks in the event they were presented.

Neither is there any evidence, we observe, that the corporation or Wilkoski deposited the rent in a bank account in plaintiff's name as authorized by Civil Code section 1500.

right to require that the check be paid. It is apparent, therefore, that the findings made by the court are insufficient to determine whether presentment was excused under section 3511, subdivision (2) thereby rendering section 3802, subdivision (1)(b) inapplicable or terminating the suspension of the underlying obligation even if section 3802, subdivision (1)(b) applied in the first instance.

*Miscellaneous Contentions*

■ Corporation contends that even if its obligation to pay rent was not suspended by section 3802, plaintiff's three-day notice to pay rent or quit was nevertheless defective in that it included in the amount claimed due $792.02 in interest and late charges. Although no authority is cited for the proposition, it is apparently the claim that only the amount of rent due may be included in the notice, and it is asserted that late charges and interest do not constitute rent.

Paragraph 2(a) of the Maher lease, entitled "RENTAL," sets forth the rent as $1,225 per month and thereafter provides: "If any rent or other payment under this Lease is not paid when due it shall bear interest at the rate of ten percent (10%) per annum until paid. . . ." It is under this provision that the $792.02 is claimed to be due. Arguably, it can be classified as additional rent. In any event, however, we do not agree that a proper notice may not include anything other than technical rent. It is true that subdivision 2 of Code of Civil Procedure section 1161 relates to a default in the payment of rent. However, the subdivision refers to the "lease or agreement under which the property is held" and requires the notice state "the amount which is due." The language is not "the amount of rent which is due" or "the rent which is due." We think the statutory language is sufficiently broad to encompass any sums due under the lease or agreement under which the property is held.

Another argument made by corporation in respect to this $792.02 is that it represents an attempt to collect liquidated damages unenforceable under California Civil Code sections 1670 and 1671, invalidating the notice. However, as previously indicated, the $792.02 is claimed as interest due on past due rent pursuant to an express provision of the Maher lease. No liquidated damages are involved. The damage which is deemed to result from a breach of an obligation to pay money is the "amount due by the terms of the obligation, with interest thereon." (Civ. Code, § 3302.) Interest is therefore lawfully recoverable for the breach of

an obligation to pay money, and we know of no reason the parties to a lease may not specify that the interest rate will be 10 percent per annum.

Finally, corporation argues the record shows as a matter of law the claimed $792.02 interest was not owing. It asserts its delivery of the checks to plaintiff constituted tenders or offers to perform with intent to extinguish the obligation under Civil Code section 1485 which, as provided in Civil Code section 1504, stopped the running of interest. However, the trial court expressly declined to find the corporation tendered the rent checks to plaintiff and found only that the corporation delivered the checks to plaintiff. (See fn. 5, *ante.*) ▮ Moreover, to have the effect claimed by the corporation, an offer to perform must be made in good faith (Civ. Code, § 1493), and the person making the offer must be willing and able to perform (Civ. Code, § 1495). (*Dickey* v. *Kuhn,* 106 Cal.App. 300, 304-305 [289 P. 242].) Thus, where the offer is to pay money, it must appear the offeror has the money to pay. (*McCarthy* v. *Grider,* 72 Cal.App. 393, 402-403 [237 P. 751].) And, generally speaking, the ability to perform must be continuous, that is, the tender must be kept good. (*Dickey* v. *Kuhn, supra,* 106 Cal.App. at pp. 303-304; *Valentini* v. *Gobbi,* 60 Cal.App. 289, 291 [212 P. 718].) As indicated in the discussion of the applicability of Commercial Code sections 3802 and 3511, there was a great deal of evidence introduced at trial that would bear upon these issues, but the trial court made no findings with respect to them in view of its conclusion that section 3802 was applicable, rendering the three-day notice insufficient. It made no finding with respect to the sufficiency of the three-day notice in any other respect. Quite obviously, these are not matters for resolution on appeal as questions of law. On remand, the trial court will have an opportunity to determine all material factual questions.

Plaintiff contends that even if its three-day notice to pay rent or quit was defective, the court should have granted it relief in ejectment. It appears that after the trial court had announced its intended decision but prior to rendition of findings of fact and conclusions of law, plaintiff presented a motion that judgment be rendered in its favor in ejectment. The trial court denied the motion on the ground it was advised of no authority for the presentation of such a motion. It indicated, however, that it would have denied the motion on substantive grounds in any event.

▮ We perceive no impropriety in the motion presented by plaintiff. Although no authority for such a motion has been brought to our

attention, it is fundamental that a court is not bound by its statement of intended decision and may enter a wholly different judgment than that announced. There is no impropriety in a party's requesting the court, by noticed motion, to exercise its power to enter a judgment different than that announced. The court, of course, is not required to grant the motion.

We are unable to pass upon plaintiff's contention that it has proved a right to relief in ejectment. ■ To prevail in ejectment it must be shown that the possession of the property by the defendant is unlawful and that the plaintiff has the right to immediate possession. Although the findings are completely silent on the status of defendant Wilkoski, it is implied in the findings that the corporation is a tenant of the property on some basis. There is no finding of its precise status, however, the court having declined to find that the Maher lease had been assigned to it. If the corporation is a tenant of some kind, there is no evidence that plaintiff terminated its tenancy unless the three-day notice was effective for that purpose. The court made no findings or conclusions on these questions and, indeed, its findings are insufficient to establish whether the three-day notice was duly served.

*Disposition*

Manifestly, the findings are insufficient to support the judgment on the theory that Commercial Code section 3802 was applicable and operated to suspend the corporation's obligation to pay rent, and the court only purported to make findings sufficient to sustain the judgment on that theory. Accordingly, the judgment is reversed with directions to the trial court to make findings of fact and conclusions of law fairly disclosing the court's determination of all material issues of fact in the case in accordance with Code of Civil Procedure section 632 and consistent with this opinion. Appellant shall recover costs on appeal.

McDaniel, J., and Morris, J., concurred.

A petition for rehearing was denied on Mar. 9, 1978, and the following opinion was rendered:

**KAUFMAN, Acting P. J.**—Respondents have filed petitions for rehearing making several new contentions and citing several additional

authorities. While we do not ordinarily consider arguments made and authorities cited for the first time in a petition for rehearing, we deem it appropriate to do so in this instance.

 Respondents' suggestion we should not have passed upon the propriety of the attorney fee awards because appellant did not complain thereof is both mistaken and unsound. Appellant appealed from the entire judgment of which the attorney fee awards are a part. Appellant complained expressly in both its opening and closing briefs that Wilkoski should not have been awarded attorney fees in view of his disavowal of the Maher lease. The propriety of both attorney fee awards was inquired into and argued at oral argument. In any event, a determination of the rights of the parties to recovery of attorney fees is necessary to a resolution of the dispute between the parties, and this court has the inherent power to decide any issue deemed necessary for a proper disposition of the case whether or not it was originally presented or briefed by the parties. (*Philbrook* v. *Randall,* 195 Cal. 95, 104-105 [231 P. 739]; *Schubert* v. *Lowe,* 193 Cal. 291, 294 [223 P. 550]; *Burns* v. *Ross,* 190 Cal. 269, 276 [212 P. 17].)

Although that was not their position at oral argument, respondents now urge that under the language of the attorney fee provision in the Maher lease they were not required to be a party to the lease to recover attorney fees, that the trial court so found and that we are bound by this finding. Respondents are wrong on all counts.

The trial court made no such express finding nor even an express conclusion to this effect. However, assuming that such a finding or conclusion may be inferred, it is patently incorrect and we are not bound by it.

The argument respondents now make is based entirely on the language of the provision. In the absence of conflicting extrinsic evidence, the interpretation of the language of a writing is a question of law upon which the reviewing court is required to exercise its independent judgment. (*Estate of Dodge,* 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385]; *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) The interpretation made by the trial court is not binding on the reviewing court even if it is reasonable and based on conflicting inferences from extrinsic evidence if the extrinsic evidence is not in conflict. (*Estate of Dodge, supra.*)

■ The attorney fee provision in the Maher lease reads in pertinent part: "In the event of any litigation between Tenant and Lessor to enforce any provision of this Lease or any right of *either party hereto, the unsuccessful party to such litigation shall pay to the successful party* all costs and expenses including reasonable attorney's fees, incurred therein." (Italics added.) Respondents urge the words "to such litigation" indicate the provision means that in any litigation between the tenant and the lessor, the successful party shall recover attorney fees whether he is a party to the lease or not. Not so. The quoted language is a garden variety attorney fee provision and indicates no intention of conferring the right to recover attorney fees on persons not a party to the lease. The words, "the unsuccessful party to such litigation" and "the successful party" both refer back to their antecedents, "either party hereto," and "Tenant and Lessor." If "the unsuccessful party to such litigation" is interpreted as referring to a person not a party to the lease, an absurdity results; the parties to the lease would be attempting to bind a person not a party to the lease to pay attorney fees. The interpretation urged by respondents is patently incorrect.

Respondents do quite properly call to our attention the By the Court opinion of this court in *Care Constr., Inc.* v. *Century Convalescent Centers, Inc.,* 54 Cal.App.3d 701 [126 Cal.Rptr. 761], in which *Babcock* v. *Omansky,* 31 Cal.App.3d 625 [ 107 Cal.Rptr. 512] is cited as additional support for the decision. In our opinion in the case at bench, of course, we disagreed with *Babcock* v. *Omansky* insofar as it indicated one who is not a party to a contract may recover attorney fees pursuant to the contract under Civil Code section 1717.

In the *Care Construction* case the parties to the litigation were both parties to the lease which contained the attorney fee provision. The problem was that the lessee prevailed in the litigation on the basis there was no enforceable lease. The question was whether a party to a lease containing a unilateral attorney fee provision may recover attorney fees under Civil Code section 1717 if he succeeds in defending on the basis that the lease is unenforceable. Our holding that he may is explicitly set forth in the last substantive paragraph of the opinion. (54 Cal.App.3d at p. 707.) We fully adhere thereto. However, our citation of *Babcock* v. *Omansky* for additional support was both improvident and unnecessary to the decision. Accordingly, that portion of the opinion in *Care Constr., Inc.* v. *Century Convalescent Centers, Inc., supra,* 54 Cal.App.3d at p. 706, citing *Babcock* v. *Omansky* as additional support is disapproved.

Finally, with respect to attorney fees, respondent corporation asserts there is an inconsistency in our holding it cannot recover attorney fees under the Maher lease and at the same time holding appellant may recover interest under the Maher lease. No such inconsistency exists, for our opinion contains no holding that appellant is *entitled to recover* interest from the corporation. What we held in respect to interest was that appellant was permitted to include in its three-day notice to pay rent or quit the amount claimed due as interest under the lease, the notice being directed to the remaining partners of the Maher law firm. We expressed no opinion of the liability of the corporation for either rent or interest on unpaid rent, since, as we pointed out, the trial court made no finding as to the status of the corporation. Neither did we express any opinion on the standing or right of the corporation to question the accuracy of the notice. (Cf. Code Civ. Proc., § 1164.)

Turning to another issue, respondent corporation, citing Civil Code section 1501 and Code of Civil Procedure section 2076, contends that appellant waived any objection to the checks delivered to it by the corporation because it failed to object to the checks at the time they were delivered to it. In the first place, Code of Civil Procedure section 2076 applies when a tender has been made. Here, the trial court expressly declined to make a finding the checks were tendered. In any event, it is well established that the waiver provided for by these statutory provisions does not apply to the requirement that a person offering to perform must be willing and able to perform (Civ. Code, § 1495) and that a failure to object to a tender or offer to perform on the ground of inability to perform does not waive that requirement. (*Allen* v. *Chatfield,* 172 Cal. 60, 68-69 [156 P. 47]; *Doak* v. *Bruson,* 152 Cal. 17, 21-22 [91 P. 1001]; *McCarthy* v. *Grider,* 72 Cal.App. 393, 402-403 [237 P. 751].)

The remaining contentions and arguments in the petitions for reconsideration are either irrelevant to any holding we have made or without merit. In either event they require no discussion. We do observe, however, that respondent corporation's reliance on the substantial evidence rule is entirely misplaced and misapprehends the basis for the reversal. We did not hold a single finding of the trial court was not supported by substantial evidence. We held the trial court failed to find on material questions of fact so that its legal conclusions, sometimes

labeled as findings of fact, and the judgment were not supported by the findings.

Respondents' petitions for reconsideration are denied.

McDaniel, J., and Morris, J., concurred.

Respondents' petitions for a hearing by the Supreme Court were denied April 26, 1978.