Margaret McLAUGHLIN, et al.,
Respondents,

v.

SPORTS & RECREATION CLUB, INC.,
et al., Appellant.

No. C8–84–160.

Court of Appeals of Minnesota.

Oct. 16, 1984.

Patrick J. Neaton, Kennedy & Neaton, Minneapolis, for respondents.

Carl J. Newquist, Smith, Juster, Feikema, Malmon & Haskvitz, Minneapolis, for appellants.

Heard, considered, and decided by SEDGWICK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

This appeal is from a declaratory judgment entered after a court trial involving the cancellation of a contract for deed and attempted reinstatement by the vendee. The trial judge ruled that the contract for deed was not cancelled, and that the vendees had effectively reinstated the contract. We affirm.

## FACTS

In 1976 respondents Margaret McLaughlin and Wayne Smith (McLaughlin and Smith) entered into a contract for deed with appellant Sports & Recreation Club, Inc. (Sports & Recreation). McLaughlin and Smith agreed to purchase land for $11,-

200.00, with $500 down and the balance to be paid at $100 per month. The interest rate was 8% per annum. McLaughlin and Smith made these monthly payments by checks drawn on the "Philbrook Farm" checking account at the St. Cloud National Bank and Trust maintained exclusively for this investment. They contributed the money necessary to meet this obligation on a 50–50 basis.

From June through September 1979, McLaughlin and Smith failed to make their monthly payments. Bruce Okney, attorney for Sports & Recreation, served a Notice of Cancellation on them on October 29, 1979. This notice provided that McLaughlin and Smith had 30 days from November 13, 1979, to cure the default. McLaughlin, who was living in Montana, mailed a check for $234 payable to "Philbrook Farm" to Smith for what McLaughlin believed was half of the amount needed to cure the cancellation. She also mailed a deposit ticket for the Philbrook Farm checking account and a signed Philbrook Farm check issued to "Bruce Okney Trust Account." The amount of the check was left blank because McLaughlin did not know the exact amount needed to cure.

No checks had been written on the Philbrook Farm checking account between August and December 1979. After the last check cleared in August 1979, the account had a balance of $.97. A service charge of $1.10 for that month created a deficit of $.13. This was the first time the bank made service charges against this account. In November 1979, unbeknown to McLaughlin and Smith and because the account had been inactive for more than two months, the bank reversed the .13 entry and "theoretically" closed the account. Neither Smith nor McLaughlin ever received notice of the account closure.

On December 10, 1979, Smith received the check and deposit ticket from McLaughlin, and called Okney to determine the exact amount that was needed to cure the default. Smith had made several calls throughout the 30 days to find out the exact amount. Okney did not return these calls. When contacted on the 10th, Okney said he did not know the amount because he did not have the file before him.

On December 13, 1979, Mark Plasha, a business associate of McLaughlin and Smith from the Twin Cities, was in St. Cloud. He volunteered to deliver the Philbrook Farm check to Okney in the cities on his way home. Smith called Okney's office to inform him that Plasha was delivering the check that day. Smith still had not been told what the exact amount of the check should be. When Plasha arrived in the cities late that afternoon, he telephoned Okney's office, and was told that Okney was out of the office for the rest of the afternoon. Plasha later called Okney at his home and asked him if he should bring the check over then or wait until the following morning and deliver it to Okney's office. Not realizing that the 13th was the last day to cure, Okney told Plasha to bring it to the office the following day.

The following day, December 14, 1979, Plasha delivered the check to Okney's office, was informed of the amount due, wrote that amount on the check, and left it with Okney. Okney took the check, told Plasha at that time that there was some problem with Sports & Recreation accepting the check, but that he would handle it. Plasha then called Smith and told him he delivered the check, but that there was some problem. That same day, December 14, Okney spoke with one of the principals of Sports & Recreation and was instructed to return the check to Smith for two reasons: (1) "it is late"; and (2) "your check is not certified."

Smith had intended to make a deposit in the Philbrook Farm account sufficient to cover the check as soon as he found out the exact amount of the check. Okney acknowledged that Smith "had difficulty getting some information (the amount due to cure) from me." Smith did not make the deposit after receiving Plasha's call on the 14th indicating there were problems with the acceptance of the check. The check was ultimately returned to Smith.

After Smith received the Philbrook Farm check back from Okney, he forwarded it to his counsel who then retendered it to Okney on January 7, 1980. On January 10, 1980, Smith deposited sufficient funds to cover the check. This deposit automatically reopened the bank checking account under the same number and with the same signatory card.

The check was never presented for payment. McLaughlin and Smith brought suit asking the court to declare the contract for deed in force and effect and for specific performance of the contract. In January 1983, Sports & Recreation's attorney deposed a bank official, and learned for the first time about the circumstances of closure and reopening of the bank checking account. After trial, the judge ruled in favor of Smith and McLaughlin. Sports & Recreation appealed.

### ISSUE

Did the trial court err in finding that McLaughlin and Smith cured a default on a contract for deed when they tendered a check before they deposited funds sufficient to cover that check?

### ANALYSIS

Minn.Stat. § 336.3–511 (1982) reads in pertinent part:

(2) Presentment * * * is entirely excused when

   *    *    *    *    *    *

(b) Such party has himself dishonored the instrument or has countermanded payment or otherwise has no reason to expect or right to require that the instrument be accepted or paid.

*Id.*

Sports & Recreation contends that the trial court should have ruled as a matter of law that presentment of Smith and McLaughlin's payment was entirely excused under Section 336.3–511, because Smith and McLaughlin had no reason to expect nor right to require that the check be paid inasmuch as it was tendered before a deposit had been made to cover it. We

do not agree. Nor can we find any statute or case law in this state which requires that funds be deposited before a check can be tendered. Sports & Recreation argues that *Canal-Randolph Anaheim, Inc. v. Moore,* 78 Cal.App.3d 477, 143 Cal.Rptr. 789 (1978) supports its position. However, *Moore,* insofar as it has any applicability to the facts in the case at bar, stands for the proposition that whether presentment is excused is a question of fact, not a question of law.

Sports & Recreation's argument that they properly refused to reinstate the contract in 1979 because Smith and McLaughlin tendered a "worthless" check ultimately fails on two grounds:

(1) The evidence indicates that Sports & Recreation returned the check to Smith because it was tendered late, and because it was not a certified check. The trial court found the tender was timely, and that the check need not be certified. These findings were not challenged on appeal.

■ (2) Sports & Recreation did not and could not have refused to reinstate the contract for deed on the basis of Smith and McLaughlin's "worthless" check because Sports & Recreation was not even aware that Smith and McLaughlin had not made a deposit sufficient to cover the check until more than three years after the check had been tendered, and more than two years after this lawsuit had been started. Therefore, Sports & Recreation's presentment argument is without merit.

■ The remaining issue is whether the trial court's findings are clearly erroneous. If not, we must affirm. *Theisen's Inc. v. Red Owl Stores, Inc.,* 309 Minn. 60, 66, 243 N.W.2d 145, 149 (1976).

The following findings are pertinent:

13. At the time that the aforesaid check was tendered to Okney, Plaintiff Wayne Smith had sufficient funds available to cover the check, but had not deposited those funds in the St. Cloud Bank because he did not know the exact amount for which the check would be written; and

that after December 14, 1979, Plaintiff Wayne Smith did not deposit the monies into the St. Cloud Bank account because Okney sent the check back to him. That at the time the check was delivered the account of the Plaintiff in the St. Cloud National Bank had been closed due to an overdraft. That to reopen said account it was necessary that funds be deposited in the bank for that particular account.

14. That the check was returned to Plaintiff Wayne Smith by Okney on December 14, 1979.

15. That plaintiff's counsel retendered the aforesaid check to Okney by letter dated January 7, 1980, and on January 10, 1980, Wayne Smith deposited sufficient monies in the St. Cloud Bank account to cover the aforesaid check.

These findings are based on undisputed testimony, and are not clearly erroneous. Sports & Recreation's assertion that Smith and McLaughlin acted wrongfully and fraudulently in knowingly issuing a worthless check finds no support in the record.

The evidence shows that Smith and McLaughlin intended to make a deposit as soon as they could find out how large a deposit was necessary. Sports & Recreation prevented them from knowing this information sooner than December 14, 1979.

## DECISION

Affirmed.