[Civ. No. 64096. Second Dist., Div. Five. Jan. 13, 1983.]

ERNST ENTERPRISES, INC., Plaintiff and Respondent, v.
SUN VALLEY GASOLINE, INC., Defendant and Appellant.

**COUNSEL**

Shapiro, Laufer, Posell & Close, Kenneth P. Roberts and David Laufer for Defendant and Appellant.

Gary B. Lovell and Jacob Stettin for Plaintiff and Respondent.

**OPINION**

**NELSON, (J. F.), J.,** *—In an unlawful detainer action, summary judgment was granted plaintiff, a petroleum distributor lessor, against defendant, a petroleum dealer lessee. The defendant appeals.

### FACTS

The plaintiff Ernst Enterprises, Inc., is a commissioned distributor of Texaco Oil Products including gasoline. The defendant Sun Valley Gasoline, Inc., leased a gasoline station from Ernst and entered into a consignment agreement with Ernst to furnish certain Texaco products including gasoline. The original lease was for a specified term which had terminated and the tenancy had continued from month-to-month without modification for several years. Such month-to-month extension was anticipated by the terms of the original lease.

In May 1980, about five years after the tenancy had become month-to-month, plaintiff served upon the defendants a notice of an immediate rent increase in the form of a charge of three cents per gallon of gasoline delivered. The addi-

*Assigned by the Chairperson of the Judicial Council.

tional rent was objected to by defendants and was not paid. Thereafter, defendants were charged and did pay a fee of two cents per gallon for gasoline delivered. The defendants contend that this fee was paid for drayage. The plaintiffs contend that it was paid as additional rent.

On July 31, 1980, a notice of termination of tenancy was given defendant by plaintiff. This notice required that the premises should be vacated by September 30, 1980. Defendants objected that the franchise agreement had not been properly terminated. Plaintiff elected to forego unlawful detainer proceedings and the tenancy continued as before. On October 24, 1980, in a letter acknowledging the tenancy of defendant, plaintiff gave another notice of increased rent of three cents per gallon effective November 1, 1980. Defendants did not pay the additional rent. They contended that the notice of increase worked a change in the terms of the tenancy and that they should have received 30-days notice instead of the few days notice actually given. On December 2, 1980, plaintiff served defendant with a three-day notice to pay rent or quit. Defendant contended rent was not due. No payment was made and this action followed.

Each side presented the trial court with a motion for summary judgment and judgment was ultimately granted to plaintiff. We are required under the authority of *Union Oil Co.* v. *Moesch* (1979) 88 Cal.App.3d 72 [151 Cal.Rptr. 517], to reverse for trial upon the merits of the complaint and applicable defenses.

I

The trial court in rendering summary judgment for plaintiff stated: "It is ordered and adjudged that pursuant to Civil Code of Procedure section 1174, that good cause existed for termination of the tenancy of defendant, Sun Valley Gasoline, Inc., a California corporation, pursuant to the requirements of Business and Professions Code section 20999.1. . . ." The trial court thus correctly acknowledged the applicability of Business and Professions Code section 20999.1.[1]

---

[1]Business and Professions Code section 20999.1 is preceded by the following list of definitions in section 20999:

"(a) 'Franchise' means any contract between a refiner and a distributor, between a refiner and a retailer, between a distributor and another distributor, or between a distributor and a retailer, under which a refiner or distributor authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of gasoline, diesel, gasohol, or aviation fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies fuel to the distributor which authorizes or permits such use. The term 'franchise' includes the following:

"(1) Any contract under which a retailer or distributor is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the sale, consignment, or distribution of fuel under a trademark which is owned or controlled by such refiner

■ However, good cause to terminate a lease pursuant to the Business and Professions Code section 20999.1 is a question of fact. (*Union Oil Co.* v.

---

or by a refiner which supplies fuel to the distributor which authorizes or permits such occupancy.

"(2) Any contract pertaining to the supply of fuel which is to be sold, consigned, or distributed under a trademark owned or controlled by a refiner, or under a contract which has existed continuously since May 15, 1973, and pursuant to which, on May 15, 1973, fuel was sold, consigned, or distributed under a trademark owned and controlled on such date by a refiner.

"(3) The unexpired portion of any franchise, as defined by the preceding provisions of this paragraph, which is transferred or assigned as authorized by the provisions of such franchise or by any applicable provision of state law which permits such transfer or assignment without regard to any provision of the franchise.

"(b) 'Franchise relationship' means the respective fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of fuel under a franchise.

"(c) 'Franchisor' means a refiner or distributor who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of fuel.

"(d) 'Franchisee' means a retailer or distributor who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of fuel.

"(e) 'Refiner' means any person engaged in the refining of crude oil to produce fuel, and includes any affiliate of such person.

"(f) 'Distributor' means any person, including any affiliate of such person, who either purchases fuel for sale, consignment, or distribution to another, or receives fuel on consignment for consignment or distribution to his or her own fuel accounts or to accounts of his or her supplier, but shall not include a person who is an employee of, or merely serves as a common carrier providing transportation service for, such supplier.

"(g) 'Retailer' means any person who purchases fuel for sale to the general public for ultimate consumption.

"(h) 'Marketing premises' means, in the case of any franchise, premises which, under such franchise, are to be employed by the franchisee in connection with the sale, consignment, or distribution of fuel.

"(i) 'Leased marketing premises' means marketing premises owned, leased, or in any way controlled by a franchisor and which the franchisee is authorized or permitted, under the franchise, to employ in connection with the sale, consignment, or distribution of fuel.

"(j) 'Contract' means any oral or written agreement. For supply purposes, delivery levels during the same month of the previous year shall be prima facie evidence of an agreement to deliver such levels.

"(k) 'Trademark' means any trademark, trade name, service mark, or other identifying symbol or name.

"(l) 'Fuel' means gasoline, diesel, gasohol, or aviation fuel.

"(m) 'Failure' does not include any failure for a cause beyond the reasonable control of either the franchise relationship or the franchisee.

"(n) 'Fail to renew' and 'nonrenewal' mean, with respect to any franchise relationship, a failure to reinstate, continue, or extend the franchise relationship at any of the following times:

"(1) At the conclusion of the term, or on the expiration date, stated in the relevant franchise.

"(2) At any time, in the case of the relevant franchise which does not state a term of duration or an expiration date.

"(3) Following a termination, on or after the effective date of this act, of the relevant franchise which was entered into prior to the effective date of this act and has not been renewed after that date.

"(o) 'Affiliate' means any person who, other than by means of a franchise, controls, is controlled by, or is under common control with, any other person.

"(p) 'Relevant geographic market area' includes this state or a standard metropolitan statistical area within this state which has been established by the United States Office of

*Moesch, supra,* at p. 75.) The trial court concluded the fact of good cause adversely to the defendant, without trial and in spite of the fact that defendant had disputed that conclusion. The issue must be tried on its merits.

## II

Another question of fact which must be put to trial is whether the notice to pay rent or quit states precisely the rent due. The plaintiff contends that it does. Defendant contends that it does not. ■ A notice to pay rent or quit which overstates the rent due is ineffective and will not support an action for unlawful detainer. (*Canal-Randolph Anaheim, Inc.* v. *Wilkoski* (1978) 78 Cal.App.3d 477 [144 Cal.Rptr. 474]; *Johnson* v. *Sanches* (1942) 56 Cal.App.2d 115 [132 P.2d 853]; Code Civ. Proc., § 1161.)

Since at least two triable issues of fact exist and the matter must be reversed for trial upon those issues, it is unnecessary to consider appellant's remaining contentions on appeal, including applicability of section 2804 of title 15 of the United States Code.

---

Management and Budget.
   "(q) 'Termination' includes cancellation.
   "Added Stats. 1981 ch. 90, § 2.
   "Former Section: Former § 20999, similar to the present section, was repealed by Stats. 1981 ch. 90, § 1."
   § 20999.1. "Termination without good cause
   "Notwithstanding the terms of any franchise, no franchisor shall terminate, cancel, or fail to or refuse to renew any existing franchise without good cause.
   "As used in this section good cause is limited to the following:
   "(a) The gasoline dealer or petroleum distributor failed to comply with essential and reasonable requirements of the franchise agreement;
   "(b) The gasoline dealer or petroleum distributor failed to act in good faith in carrying out the terms of the franchise; or
   "(c) The franchisor is withdrawing from the marketing location at which the franchise of a gasoline dealer is located, provided that the franchisor pays the gasoline dealer the current wholesale market value for all qualifying equipment and supplies purchased by the gasoline dealer from the franchisor or affiliate of the franchisor. This subdivision shall only apply to those gasoline dealer franchises which are entered into or renewed on or after January 1, 1979. As used in this subdivision, 'qualifying equipment and supplies' means all equipment and supplies purchased by the gasoline dealer from the franchisor or an affiliate of the franchisor which is free and clear of all liens, security interests and other encumbrances, valued on a first-in, first-out basis, evidenced by receipted invoices, and is (i) in first-class and resalable condition, (ii) in the original packages or containers and (iii) bears the original labels and trademarks, and (iv) the goods display no evidence of deterioration. This subdivision shall not be construed to create any priority over any other debt between the parties to the franchise arising from the same franchise agreement.
   "(d) For other legitimate business reasons (except that a termination, or cancellation of a franchise for the purpose of enabling the petroleum distributor or manufacturer to assume operation of the distributor's or gasoline dealer's business shall not be considered to be a legitimate business reason unless the gasoline dealer or distributor is paid reasonable compensation for the value of his franchise, including a reasonable amount for goodwill)."

The judgment is reversed. Appellant to recover costs on appeal.

Ashby, Acting P. J., and Hastings, J., concurred.