[No. F003207. Fifth Dist. May 29, 1985.]

JOHN VALOV, Plaintiff and Respondent, v.
WALTER E. TANK, Defendant and Appellant.

**COUNSEL**

Houk, Hicks, Spain & Line and Lloyd L. Hicks for Defendant and Appellant.

Soares, Rowson, Horswill & Mederos and Dennis A. Mederos for Plaintiff and Respondent.

**OPINION**

**HAMLIN, Acting P. J.—**

### STATEMENT OF THE CASE

In this unlawful detainer action, after trial to the court, judgment, including an award of unpaid rent plus interest and restitution of the leased premises, was rendered in favor of plaintiff. Defendant appeals, challenging the validity of the statutory three-day notice for failure to demand the exact sum due and the effectiveness of the service of that notice.

 This appeal requires us to determine whether a demand for payment of rent in an amount equal to 20 percent of the proceeds of all crops grown on the leased premises, the exact sum being known only to the tenant because of his failure to render an accounting, satisfies the requirement of Code of Civil Procedure section 1161, subdivision 2,[1] that the notice state the amount of rent due. We hold that it does. We also conclude that the service of the three-day notice was valid and affirm the judgment.

---

[1]Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## The Facts

Plaintiff purchased 790 acres of Tulare County farmland in 1979. He farmed it in 1980. In late 1981, defendant, a good friend of plaintiff's who previously farmed the property, requested a written lease to permit him to farm the property in 1982. Plaintiff told defendant to prepare such a lease and he (plaintiff) would sign it. Defendant prepared a five-year lease which provided, inter alia, that rent was to be 20 percent of the gross crop, and that defendant was to provide plaintiff with the figures necessary to calculate this amount. The rent for 1982 was payable on January 1, 1983.

Defendant failed to furnish plaintiff an accounting of the 1982 crop proceeds and made no payment of rent on January 1, 1983. Plaintiff then prepared a "Notice to Pay Rent or Surrender Possession" pursuant to section 1161, subdivision 2. The notice identified the lease to defendant, the premises covered by the lease and then stated: "There is now due and unpaid rent for said premises pursuant to said Lease amounting to one-fifth (⅕) crops rent on all crops, being twenty percent (20%) of all crops grown thereon, the exact figure of which only you are aware, for the period from December 1, 1981 through December 31, 1982. Said rent was due and payable on the first day of January, 1983."

Plaintiff employed Clifford Ketchie, a registered process server, to attempt service of the notice on defendant. Ketchie went to defendant's residence on the evening of January 21, 1983, but did not see anyone there. He returned about 6 p.m. on January 23, 1983, and observed defendant sitting in the living room, but after defendant saw Ketchie, he left the room, and failed to answer Ketchie's knocks. Ketchie went to a phone booth and searched the phone directory for defendant's name, discovering a listing for "W. E. Tank Farms" at the same address as the residence. When Ketchie called the listed number, an answering service informed him there was no way to contact defendant directly; defendant called in for messages once a week.

Ketchie returned to the residence on January 24, 1983, and again received no response to his knocks. He waited outside for about an hour, until the garage door opened slightly and a large Doberman dog came out of the garage and snapped at Ketchie's car door.

Ketchie next went to a nearby building on Road 112 which he had been informed might be a business address of defendant, but the occupants stated that they did not know defendant and that they had been living there for some time.

On January 26, 1983, Ketchie again went to defendant's residence in the late evening and, observing no one there, he taped the three-day notice to the door of the residence. The next day Ketchie mailed a copy of the notice to defendant at 10749 Avenue 128, Tipton. Defendant's answer admitted that he "ultimately received" the three-day notice.

Defendant never tendered any payment of rent prior to the filing of the unlawful detainer action. On March 9, 1983, the day defendant was served with the summons and complaint, he offered to pay plaintiff about $16,000, which plaintiff refused. That amount represented about $21 per acre; the fair rental value for the subject farmland was about $70 per acre, which would have yielded a rental payment for the 790 acres of about $50,370. As of the date of trial, September 1, 1983, defendant remained in possession of the leased premises.

## DISCUSSION

I. *Did the Three-Day Notice Comply With the Requirements of Section 1161, Subdivision 2?*

Section 1161, subdivision 2, provides that a tenant holding over after failing to pay rent is in unlawful detainer of the real property after ". . . three days' notice, in writing, requiring its [the rent] payment, *stating the amount which is due* . . . shall have been served upon him . . . ." (Italics added.) The notice prepared by plaintiff was in the form stated above. Defendant has consistently argued that the quoted passage of the notice does not "state the amount due" as required by the relevant statute. The trial court found that "the statement in the notice of the formula for calculating the rent due upon information in the [defendant's] possession is sufficient compliance with Code of Civil Procedure Section 1166 [*sic*; should have been 1161]."

Defendant correctly points out that many cases state that the three-day notice sent to a tenant as a prerequisite for a finding of unlawful detainer must contain a demand for "the *precise sum* . . ." of rent due. (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 527, pp. 2201-2202.) "The purpose of this notice is to give the tenant the opportunity to pay the rent and retain possession." (*Briggs* v. *Electronic Memories & Magnetics Corp.* (1975) 53 Cal.App.3d 900, 905 [126 Cal.Rptr. 34].)

*Werner* v. *Sargeant* (1953) 121 Cal.App.2d 833 [264 P.2d 217] and *Johnson* v. *Sanches* (1942) 56 Cal.App.2d 115 [132 P.2d 853] are cases frequently cited for the proposition that the notice is defective if it does not state the precise amount due. (E.g., 4 Miller & Starr, Current Law of Cal.

Real Estate (1977) § 27:114.) Those cases properly stand only for the rule that a notice which contains a demand for rent in excess of the amount provided in the lease is defective. Certainly, such a notice does not fulfill its purpose of giving the tenant an opportunity to pay the delinquent rent and retain possession.

Similarly, *Baugh* v. *Consumers Associates, Ltd.* (1966) 241 Cal.App.2d 672, 674 [50 Cal.Rptr. 822], includes the statement that "the exact amount of rent claimed to be due must be stated in the notice to pay rent or quit." However, the notice at issue in that case contained no statement whatsoever of the amount of delinquent rent or the period of the alleged deficiency. Such a notice could never be construed to comply with the statutory requirement that the notice state "the amount [of rent] which is due."

Defendant also cites *J. B. Hill Co.* v. *Pinque* (1919) 179 Cal. 759 [178 P. 952, 3 A.L.R. 669] in support of his contention that the notice must include a demand for the specific sum due. The Supreme Court's statement to that effect in that case must be considered in light of the issue it was deciding. There, the landlord admittedly had done nothing more than "ask for the rent."

None of the other cases defendant relies upon involve a notice which states the due date of the rent and the amount delinquent based on the measure of the rent specified in the lease when the landlord lacks the information needed to compute the dollar amount of the delinquent rent.

In *Budaeff* v. *Huber* (1961) 194 Cal.App.2d 12 [14 Cal.Rptr. 729], an action in ejectment, failure to demand the precise sum due as rent was held not a ground for reversal where the landlord had made "several written demands for the rent." (*Id.,* at p. 14.) The court noted that an action in ejectment did not require the three days' notice of an unlawful detainer action, but that ejectment still required a demand for the rent due. (*Id.,* at pp. 17-18.) Such a demand is required by "elementary fairness . . . so that the tenant will know what he must do to avoid the forfeiture." (*Id.,* at p. 18.) The court then noted, without further elucidation, that "the decisions of our courts recognize there is a substantial difference between an action in ejectment . . . and an action for unlawful detainer . . ., the latter being a summary remedy in which treble damages may be recovered [citation]." (*Id.,* at p. 19.)

At least one other court has, in dicta, suggested a modification of the statutory rule that a demand for the precise sum of rent due must precede an unlawful detainer action: "It may be this rule should be reexamined. It apparently derives from the rule at common law that a demand for payment

of the exact sum was a necessary prerequisite to a forfeiture of a lease for nonpayment of rent. [Citations.] The modern justification for the rule would appear to be fairness to the tenant. [Citing *Budaeff*.] Where the amount stated in the notice is incorrect but trial discloses a substantial amount of rent owing, fairness to both the tenant and the landlord could be achieved by entry of a judgment in favor of the tenant on condition that he pay the past-due rent within a specified period of time. Multiplicity of litigation could thereby be avoided. The present rule does not appear to serve the need for conserving judicial resources occasioned by the law explosion." (*Canal-Randolph Anaheim, Inc.* v. *Wilkoski* (1978) 78 Cal.App.3d 477, 488, fn. 4 [144 Cal.Rptr. 474].)

The trial court evidently viewed *Budaeff* as having softened the frequently stated rule requiring demand for the exact amount of rent due, and the court specifically rejected defendant's argument that *Budaeff* did not control where the statutory remedy of unlawful detainer was utilized by the landlord. But *Budaeff* was an action for ejectment. The court in *Budaeff* noted the "substantial difference" between ejectment and unlawful detainer. (*Budaeff* v. *Huber, supra,* 194 Cal.App.2d at p. 19.) The court found that the technical requirements for a demand in an action for ejectment had been satisfied.

While we are not convinced that *Budaeff* is controlling in this case, the same considerations of fairness noted in that case are persuasive here. Defendant does not dispute that plaintiff gave the most precise statement of rent he was capable of giving. Neither does defendant deny that he was in a position to compute the amount of rent he had to pay to retain possession. Instead, he urges that the summary nature of the statutory unlawful detainer remedy requires that the party seeking it must bring himself clearly within the statute (see *Baugh* v. *Consumers Associates, Ltd., supra,* 241 Cal.App.2d at p. 674), and plaintiff has not done so.

■ The interpretation of a statute is a question of law, and the appellate court is not bound by evidence presented on the question in the trial court. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) ■ In construing a statute, the appellate court begins with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) In determining such intent the court first turns to the words themselves for the answer. (*Ibid.*) ■ The court is required to give effect to statutes according to the usual, ordinary import of the language employed in framing them. (*Id.,* at pp. 658-659.) ■ The various parts of a statu-

tory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. (*Id.*, at p. 659.) ▪ When the legislative purpose for including the statutory language under consideration is apparent, legislative purpose is a valuable guide to interpretation. (2A Sutherland, Statutory Construction (1984 rev.ed.) § 45.09, p. 40.)

▪ The purpose of the notice required by section 1161, subdivision 2, is to give the tenant the opportunity to pay the rent due and retain possession by avoiding forfeiture. (See, e.g., *Briggs* v. *Electronic Memories & Magnetics Corp.*, *supra,* 53 Cal.App.3d at p. 905.) This entire statutory procedure is intended to provide an expeditious and adequate remedy for obtaining possession of premises wrongfully withheld by tenants. (See *Childs* v. *Eltinge* (1973) 29 Cal.App.3d 843, 853 [105 Cal.Rptr. 864].) Here, plaintiff did everything possible to make defendant aware of the amount of rent due by demanding payment of the delinquent rent "amounting to one fifth (⅕) crop rent on all crops, being twenty percent (20%) of all crops grown thereon, the exact figure of which only you are aware." That notice gave defendant all necessary information to calculate the rent due on a specified date and advised him that he is the only one capable of calculating the rent due. Even under the required strict construction of the unlawful detainer statute (*Briggs* v. *Electronic Memories & Magnetics Corp.*, *supra,* 53 Cal.App.3d at p. 905), it is not reasonable to permit defendant by his own default in failing to furnish plaintiff the amount of the proceeds received from the crops grown on the leased premises to deny plaintiff the right to recover expeditiously either the rent due or possession of the leased premises. It is no answer to say to a landlord in this circumstance, as suggested by the dissent, that the lease might have included provisions to preclude the possibility that the tenant could take advantage of his own default. The reasonable expectations of landlords and tenants will be better served by a rule which disadvantages only the party who fails to comply with commonly imposed leasehold obligations. The Legislature could not reasonably have intended that the landlord be required to do more than plaintiff did in this case to state "the amount [of rent] which is due."

We hold that this three-day notice demanding payment of rent due on a specified date in an amount calculable on the measure of delinquent rent stated in the notice based on information known to the tenant and wrongfully withheld from the landlord satisfies the statutory requirement that such notice state the amount of rent due.

II. *Did Defendant Waive Any Defect in Service of the Three-Day Notice?*

Section 1162 provides three methods by which the three-day notice required by section 1161 may be served upon the tenant: "1. By delivering a copy to the tenant personally; or,

"2. If he be absent from his place of residence, and from his usual place of business, by leaving a copy with some person of suitable age and discretion at either place, and sending a copy through the mail addressed to the tenant at his place of residence; or,

"3. If such place of residence and business cannot be ascertained, or a person of suitable age or discretion there can not be found, then by affixing a copy in a conspicuous place on the property, and also delivering a copy to a person there residing, if such person can be found; and also sending a copy through the mail addressed to the tenant at the place where the property is situated. Service upon a subtenant may be made in the same manner."

██ Defendant contends that plaintiff did not comply with any of the three statutorily mandated methods for serving the three-day notice. He further argues that his actual receipt of the notice, established by his admission to that effect in his answer, does not vitiate the procedural defects in the service of the notice.

The trial court recited a number of bases upon which it might have concluded that defendant was adequately served, then ruled as follows: "To summarize, the evidence revealed that defendant attempted to avoid personal service of the notice and admits to receiving the notice posted on his residence door and thereafter mailed to his home. There is no rule of law that would compel the court under these circumstances to find such notice inadequate. Fairness and commonsense dictate otherwise."

██ As pointed out in Moskovitz, California Eviction Defense Manual (Cont.Ed.Bar 1971) section 3.17, page 15, "[c]ourts are not always as strict in evaluating proper service of *notice* as they are in evaluating proper service of *process.*"

In *University of So. Cal.* v. *Weiss* (1962) 208 Cal.App.2d 759 [25 Cal.Rptr. 475], the landlord served a 30-day notice of termination of tenancy (pursuant to Civ. Code, § 1946, which specified § 1162 as governing the manner of service) by mailing a copy to the tenants. (*Id.*, at p. 764.) In connection with a motion for summary judgment, the landlord's agent also asserted that one of the tenants had acknowledged receipt of the notice (the tenant denied such receipt). (*Ibid.*) In affirming the trial court's granting of summary judgment for the landlord, the Court of Appeal held: "In the present case the copy of the notice was not delivered to [the tenant] personally by [the landlord's] attorney, but it was mailed to [the tenant] and he admitted that he received it. This method of serving the notice was a sufficient compliance with the provision in . . . section 1162 as to personal

service. . . . '[P]ersonal service may be made through the instrumentality of the mails. The post office department, as well as any other type of messenger, may be used to effect personal service. [Citations.]' . . . In the present case the court could find, from the statements in [the landlord's] affidavit with respect to mailing the notice and with respect to [the tenant] receiving it, that [the tenant] was served properly with the notice of termination of the tenancy." (*Id.*, at p. 769.)

In *Wilcox* v. *Anderson* (1978) 84 Cal.App.3d 593 [148 Cal.Rptr. 773], a landlord served a 30-day notice of changes in the terms of a lease (pursuant to Civ. Code, § 827, which specified § 1162 as governing the manner of service), by mailing the notice to the tenant. As the tenant did not contend that the letter was not received, the court found that service had been effected. (*Id.*, at pp. 596-597; see also *Colyear* v. *Tobriner* (1936) 7 Cal.2d 735 [62 P.2d 741, 109 A.L.R. 191].)

Here, defendant admitted in his answer that he "ultimately received [the relevant] notice" but "affirmatively allege[d] that he was not properly and legally served" with a valid notice. We find that, under the circumstances of this case, the defendant waived any defect in the challenged service of the notice under section 1162, subdivision 1.

Furthermore, as stated above, plaintiff *repeatedly* attempted personal service of the three-day notice on defendant at his residence, to no avail due to defendant's successful efforts to avoid the process server. Finally, the notice was posted on defendant's residence and a copy was mailed to defendant. The trial court found that defendant admitted he received the posted notice that was also mailed to his home. Whichever notice defendant ultimately received, if not both, personal service under section 1162, subdivision 1, had been effected.

The judgment is affirmed.

Martin, J., concurred.

**VANDER WALL, J.**\*—With regard to part I of the majority opinion, I respectfully dissent.

Under existing California law, there is no legal authority for a modification of the rule requiring a three-day notice to pay rent to state the precise sum of rent due. (Code Civ. Proc., § 1161, subd. 2; *J. B. Hill Co.* v. *Pinque* (1919) 179 Cal. 759, 761-762 [178 P. 952, 3 A.L.R. 669]; *Gage*

---

*Assigned by the Chairperson of the Judicial Council.

v. *Bates* (1870) 40 Cal. 384, 385; *Gaskill* v. *Trainer* (1853) 3 Cal. 334, 339; *Ernst Enterprises, Inc.* v. *Sun Valley Gasoline, Inc.* (1983) 139 Cal.App.3d 355, 359 [188 Cal.Rptr. 641]; *Baugh* v. *Consumers Associates, Ltd.* (1966) 241 Cal.App.2d 672, 674 [50 Cal.Rptr. 822]; *Werner* v. *Sargeant* (1953) 121 Cal.App.2d 833, 837 [264 P.2d 217]; *Johnson* v. *Sanches* (1942) 56 Cal.App.2d 115, 117 [132 P.2d 853]; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 527, pp. 2201-2202.)

The "considerations of fairness" applied in *Budaeff* v. *Huber* (1961) 194 Cal.App.2d 12 [14 Cal.Rptr. 729], are inapplicable to the *summary* remedy of unlawful detainer. *Budaeff* was an action in ejectment, and its holding should be limited to the peculiar facts of that case. There, the precise sum of rent owed was admittedly not in dispute: The landlord had demanded, and the tenant admitted, the precise sum due. The court noted that where there is a dispute as to the amount of rent owing or as to when it is owing, ". . . elementary fairness requires that the landlord demand the precise sum due, so that the tenant will know what he must do to avoid the forfeiture." (*Budaeff* v. *Huber, supra,* 194 Cal.App.2d at p. 18.)

Unlawful detainer is a statutorily created remedy, designed to give a landlord a method by which he can "quickly" recover possession of his leased premises. (*Briggs* v. *Electronic Memories & Magnetics Corp.* (1975) 53 Cal.App.3d 900, 906, fn. 5 [126 Cal.Rptr. 34].) Because of its summary nature, the statutes providing for it are to be strictly construed. (*Id.,* at p. 905.) For this reason, and in view of the weight of authority interpreting the present statutory scheme, any change in the historic rule requiring a three-day notice to state the precise sum of rent due is best left to the Legislature. The effect of the rule change proposed by the majority will extend far beyond the agricultural setting in this case. Commercial leases, particularly in shopping centers, often state the rent in terms of a percentage of gross sales. Under these circumstances, an informed Legislature is in the best position to balance the interests of landlords and tenants, and society as a whole, in formulating a change in the unlawful detainer laws.

Meanwhile, there are a variety of options available to the informed landlord. For example, a landlord who seeks to maximize his gain by use of a percentage lease can easily protect against an unscrupulous tenant with a well-drafted lease. Such a lease would include a covenant requiring the tenant to provide a statement of gross sales at the end of each percentage rent period, including an annual statement. Provision can be made for accurate bookkeeping and accounting practices by the tenant at his place of business, making the books available to the landlord for inspection. Such covenants are common today in commercial leases. (See Commercial Real Property Lease Form (Cont.Ed.Bar 1984 rev.) Statement of Gross Sales,

§ 3.39, pp. 31-32.) A violation of such a covenant would make the unlawful detainer remedy available to the landlord pursuant to Code of Civil Procedure section 1161, subdivision 3.

The landlord who neglects to take such precautions is not without a remedy, since he may utilize the less summary action of ejectment to regain possession of his property. That he chooses to use the summary remedy of unlawful detainer should not excuse him from its technical requirements under the present law.

For the above reasons, the trial court was in error when it concluded the plaintiff had complied with the applicable provisions of Code of Civil Procedure section 1161, subdivision 2.

I would reverse the judgment.