[No. B217037. Second Dist., Div. Seven. June 14, 2010.]

CULVER CENTER PARTNERS EAST #1, L.P., Plaintiff and Appellant, v. BAJA FRESH WESTLAKE VILLAGE, INC., Defendant and Respondent.

COUNSEL

Law Offices of Joshua L. Rosen and Joshua L. Rosen for Plaintiff and Appellant.

Perry Roshan-Zamir for Defendant and Respondent.

OPINION

**PERLUSS, P. J.**—Culver Center Partners East #1, L.P. (Culver Center) sent by e-mail a notice to pay rent or quit to the leasing manager of its tenant, Baja Fresh Westlake Village, Inc. (Baja Fresh). The parties' lease authorized electronic service of notices, as well as service by personal delivery and certified mail, but did not identify an individual to whom notice should be directed or provide an electronic notification (e-mail) address at which Baja Fresh agreed to accept service. Although Baja Fresh actually received the notice, the trial court granted Baja Fresh's summary judgment motion in this unlawful detainer action because Culver Center failed to present any evidence the electronic notice had been delivered to the street address specified in the parties' lease. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Lease*

On May 16, 2001 Baja Fresh entered into a five-year commercial lease with Culver Center's predecessor in interest, Westside Walk, LLC, to occupy the property located at 10768 Venice Boulevard in Culver City (the property). On January 18, 2006 Baja Fresh exercised its option to extend the term of the lease through August 31, 2011.

Paragraph 5.3 of the lease provides the minimum monthly rent for the property—$8,268.75, for the period September 1, 2006 through February 28, 2009—is due and payable on the first of each month.

Paragraph 31 of the lease provides, "All notices, consents, approvals or demands required under this Lease shall be in writing, and shall be deemed delivered when either (a) deposited in the United States mail, certified or registered, postage prepaid; (b) transmitted by telegraphic or electronic means, with proof of service provided, or (c) delivered in person; in any event addressed to or delivered to the appropriate party at:

"TENANT: BAJA FRESH WESTLAKE VILLAGE, INC.

 225 West Hillcrest Drive #351

 Thousand Oaks, C[A] 91360

"LANDLORD: WESTSIDE WALK, LLC

 589 N. Venice Blvd.

 Los Angeles, CA 90291

"or to such other address as either party may from time to time designate for this purpose."

### 2. Change-of-address Notices

In May 2007 Culver Center notified its tenants, including Baja Fresh, that it had purchased the property from Westside Walk and that all rental payments were to be sent to "Culver Center Partners-East #1, L.P., c/o Preferred Bank, 325 East Valley Boulevard" in Alhambra.

In May 2008 Baja Fresh sent Culver Center a change-of-address notice pursuant to paragraph 31 of the lease advising it that its new address for service of any notice under the lease was 2000 East Winston Road in Anaheim. The change-of-address notice was signed by Deborah Larson, Baja Fresh's leasing manager.

### 3. Culver Center's Notice to Quit and Baja Fresh's Response

On January 9, 2009 Culver Center purported to serve Baja Fresh with a five-day notice to pay $14,186.77 in rent (inclusive of maintenance charges and taxes under the lease) or quit and deliver the premises. Culver Center transmitted the notice to quit to Larson by three separate means: (1) certified mail to Larson's business address in Cypress; (2) facsimile transmission to her business address in Cypress; and (3) an attachment to an e-mail sent to Larson's business e-mail account. Culver Center also attempted to effect substituted service on a restaurant manager at the property. Culver Center concedes it neither personally served anyone at the Winston Road address nor mailed the notice to quit to that address.

The parties dispute whether Larson ever received the notice to quit sent to her Cypress address. She did, however, receive an e-mail from Angie Enriquez, Culver Center's agent, on Friday, January 9, 2009 at 5:14 p.m. The e-mail message read, "[A]ttached is the 5-Day Notice" concerning Baja Fresh's rental default and included a separate attachment containing the notice to quit.

On Saturday January 10, 2009 Larson spoke on the telephone with Culver Center's managing agent, Juri Rapinski, advising him that, while notice had not been properly served in accordance with the lease terms, Larson would nonetheless investigate any default in rental payments and, if it had not already been sent, would send the rent payment on Monday, January 12, 2009.

On January 12, 2009 Baja Fresh sent its January monthly rental payment in full via United Parcel Service (UPS) overnight delivery to "Culver Center Partners, 325 East Valley Boulevard" in Alhambra. On January 15, 2009 Baja Fresh received a postcard from UPS explaining it had been unable to complete the delivery because Culver Center was unknown at the Alhambra address provided. The matter was clarified on January 15, 2009 after Baja Fresh determined it had inadvertently omitted the name of Preferred Bank on the delivery address, as provided in the change-of-address addendum to the lease. Baja Fresh's rent check was then delivered to Culver Center's agent, Preferred Bank, at the Alhambra address on January 16, 2009.

Culver Center returned Baja Fresh's rental check without cashing it, claiming it had been received beyond the five-day cure period.

### 4. The Unlawful Detainer Lawsuit and Summary Judgment

On January 20, 2009 Culver Center filed an unlawful detainer complaint.[1] On April 3, 2009 Baja Fresh filed a motion for summary judgment, asserting it was entitled to judgment as a matter of law because Culver Center's service of the notice to quit did not comply with notice provisions in the lease and, in any event, Baja Fresh had cured its rental default by sending a check for the full amount due well within the five-day cure period specified in the January 9, 2009 notice to quit.

---

[1] The complaint was filed and processed as an unlimited civil action in the Los Angeles County Superior Court.

Culver Center agreed in its opposition to the motion that the facts concerning service of the notice to quit were undisputed, but argued the motion should be denied because Baja Fresh had admitted in its moving papers Larson had received an e-mail with an attachment that included the notice to quit. Culver Center argued e-mail was an authorized means of service under the lease and, in any event, Baja Fresh's undisputed receipt of the notice to quit cured any defect in its service. It also argued Baja Fresh did not pay its rent within the five-day period articulated in the notice.

The court granted Baja Fresh's motion for summary judgment concluding the notice to quit had not been properly served on Baja Fresh. The trial court entered judgment in favor of Baja Fresh and awarded it, as the prevailing party, costs in the amount of $1,595.65 and attorney fees in the amount of $29,225 in accordance with attorney fee provisions in the lease.

## DISCUSSION

### 1. *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[2] We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296].)

### 2. *The Notice to Quit Was Not Properly Delivered in Accordance with the Lease Terms*

Unlawful detainer is a summary proceeding to determine the right to possession of real property. Generally, in order to take advantage of this summary remedy, the landlord must demonstrate strict compliance with the statutory notice requirements contained in section 1161 et seq., including providing the tenant with three days' written notice to pay rent or quit the premises. The notice to quit must be served personally or, if personal service is not possible, by substituted service. (See §§ 1161 [before pursuing unlawful detainer remedy, landlord must provide tenant with three days' written notice to pay rent or quit premises as provided in § 1162], 1162 [notice to quit may be served by delivering copy to tenant personally or by substituted service at tenant's residence or usual place of business]; see also *WDT-Winchester v. Nilsson* (1994) 27 Cal.App.4th 516, 526 [32 Cal.Rptr.2d

[2] Statutory references are to the Code of Civil Procedure.

511] [§§ 1161 and 1162's statutory requirements " ' "must be followed strictly, otherwise a landlord's remedy is an ordinary suit for breach of contract with all the delays that remedy normally involves and without restitution of the demised property" ' "].)

In commercial leases the landlord and commercial tenant may lawfully agree to notice procedures that differ from those provided in the statutory provisions governing unlawful detainer. (See *Folberg v. Clara G. R. Kinney Co.* (1980) 104 Cal.App.3d 136, 141 [163 Cal.Rptr. 426] [parties to commercial lease may lawfully agree to notice provisions different from those provided in §§ 1161 & 1162]; *250 L.L.C. v. PhotoPoint Corp.* (2005) 131 Cal.App.4th 703, 718 [32 Cal.Rptr.3d 296] [parties to commercial leases may waive rights under Civ. Code].) Thus, if the lease contains service requirements for the notice to quit at variance with the requirements in the unlawful detainer statutes, the lease provisions control. (*Folberg*, at p. 141.)

Culver Center acknowledges not only that it did not properly accomplish in-person service of the notice to quit or substituted service, but also that it did not mail the notice to the appropriate address in accordance with the lease. Nonetheless, it argues its e-mail to Larson with the notice-to-quit attachment complies with paragraph 31's authorization of notice transmitted by "electronic means."

Culver Center's argument misapprehends the notice provisions in the lease. Paragraph 31 specifies four authorized methods to transmit the notice— (1) mail; (2) telegraph; (3) electronic transmission (for which e-mail would undoubtedly qualify);[3] and (4) in-person service. To be effective, however, no matter what means is used to accomplish it, the notice must be delivered to the address provided in the lease "or to such other address as [tenant] may from time to time designate for this purpose" (in this case, the Winston Road address). As Culver Center concedes, the e-mail was sent to, and received by, Larson, at her business address in Cypress, not the Winston Road address in Anaheim.

Because e-mail by its very nature is not restricted to a particular postal address, but can typically be received from any location that provides computer and Internet access, Culver Center suggests it does not matter where Larson actually received the e-mail, as long as she could have received it from the Winston Road address. Yet, there was no evidence before the trial court that the e-mail was sent to, or even could have been received by, Larson at the designated Winston Road address. While this focus on the physical

---

[3] See, e.g., California Rules of Court, rule 2.250(6) [" '[e]lectronic service' is the electronic transmission of a document to a party's electronic notification address, either directly or through an electronic filing service provider, for the purpose of effecting service"].)

location of receipt (or delivery) of an e-mail has some artificiality (and technological naivete) in this age of laptop computers and smartphones, the fault, if there be any, lies in the language of the lease itself, which, while apparently contemplating "electronic service," nonetheless omits any reference to an electronic notification address to accomplish that service. (Cf. Cal. Rules of Court, rule 2.260(a)(2)(A) [when notice may be served by mail, express mail, overnight delivery or fax transmission, "electronic service" of notice is also permitted, provided party agrees to accept electronic service by filing consent form that includes "electronic notification address at which the party agrees to accept service"].) Because the e-mail was not served at the only address designated for service of notice, it did not comply with the lease.

### 3. *Larson's Actual Notice Does Not Cure the Deficiency in Service*

Culver Center argues, whether or not its service of the notice to quit complied with the lease, the evidence is undisputed that Larson received the notice via e-mail on January 9, 2010. Citing *University of Southern California v. Weiss* (1962) 208 Cal.App.2d 759, 769 [25 Cal.Rptr. 475] (*Weiss*), Culver Center contends Baja Fresh's actual receipt of the notice to quit either cures the deficiency in service or results in a forfeiture of any right to contest service-related deficiencies.

In *Weiss*, an unlawful detainer case, the appellate court found that service of the notice to quit by mail was improper under section 1162. Nonetheless, because the landlord established it had served the notice to quit by mail and the tenant admitted he had received it in the mail, the court found section 1162's requirements for *personal* service had been satisfied. (*Weiss, supra*, 208 Cal.App.2d at p. 769 ["personal service may be made through the instrumentality of the mails[;] [t]he post office department, as well as any other type of messenger, may be used to effect personal service"]; accord, *Valov v. Tank* (1985) 168 Cal.App.3d 867, 876 [214 Cal.Rptr. 546] [where defendant managed to successfully evade the process server, but admitted he received the notice landlord posted and mailed to his home address, "personal service under section 1162, subdivision 1, had been effected"]; *Wilcox v. Anderson* (1978) 84 Cal.App.3d 593, 596–597 [148 Cal.Rptr. 773] [where landlord established notice was properly mailed to tenant and tenant did not contest he actually received the notice to quit, landlord complied with § 1161's personal service requirements].)

Whatever its current merit, the analysis in *Weiss, supra*, 208 Cal.App.2d 759—a notice to quit, mailed to the tenant, is considered personally served if the tenant acknowledges receiving the notice in the mail—is simply inapposite. Unlike in *Weiss* and the cases relying on it (see *Valov v. Tank, supra*, 168

Cal.App.3d at p. 876; *Wilcox v. Anderson, supra*, 84 Cal.App.3d at pp. 596–597), the notice to quit in this case was not sent (even by electronic transmission) to the proper address. Thus, the e-mail delivery of the notice was in no way tantamount to personal service or to any other means of service authorized under the lease.

Relying on language in the Rutter Group practice guide stating "proof that the tenant received actual notice apparently will 'cure' defective service" (Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2009) ¶ 7:177, p. 7-46 (rev. # 1, 2007)), Culver Center insists Larson's actual receipt of the notice results in a waiver or forfeiture of the ability to challenge deficiencies in its service. However, that notably equivocal language is expressly based on the holdings in *Wilcox v. Anderson, supra*, 84 Cal.App.3d at pages 596–597 and *Valov v. Tank, supra*, 168 Cal.App.3d at page 876, cases that, as we have discussed, are inapposite.

Moreover, even if some policy rationale might support such a waiver/forfeiture rule in the residential lease context, there is no basis to apply it in the commercial context where matters of service and waiver are prescribed in the lease itself. (See, e.g., *Folberg v. Clara G. R. Kinney Co., supra*, 104 Cal.App.3d at p. 141 [commercial lease provisions override statutory service requirements in unlawful detainer].) Nothing in the parties' lease suggests actual receipt of a notice to quit results in the waiver or forfeiture of Baja Fresh's right to service accomplished in the manner prescribed. To the contrary, the lease specifically provides, "No covenant, term or condition, or breach" of the lease "shall be deemed waived except if expressly waived in a written instrument executed by the waiving party." Although Larson acted on the notice to quit by attempting to deliver the rent check, neither her fortuitous receipt of the notice nor her actions in response to it constitutes an express waiver of the notice provisions in the lease.

■ In sum, Culver Center failed to comply with the lease's provisions for service of a notice to quit. Because there is no evidence Baja Fresh expressly waived the notice provisions in the lease, Culver Center's improper service of the notice precludes its access to the summary remedy of unlawful detainer.[4]

---

[4] Baja Fresh argued in the trial court and reiterates on appeal that Larson was not the appropriate person to receive the notice because she was never identified as such in the lease. Although we have serious doubts as to the merit of that argument—in fact, no one was identified in the lease as the "appropriate person" to receive notice and Larson had served as Baja Fresh's point person for notice in the past—in light of our holding that summary judgment was proper because Culver Center did not demonstrate proper service of the notice to quit, we need not reach that issue.

## DISPOSITION

The judgment is affirmed. Baja Fresh is to recover its costs on appeal.

Zelon, J., and Jackson, J., concurred.