Filed 4/9/26  K-Town Benzene v. DJHM Corp. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| K-TOWN BENZENE LLC, | B340759 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 24STCV01577) |
| v. | |
| DJHM CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia Martin, Judge.  Reversed with instructions.

Klapach & Klapach, Joseph S. Klapach, for Plaintiff and Appellant.

Kim Park Choi & Yi, Michael Y. Yi, for Defendant and Respondent.

—————————————

## INTRODUCTION

K-Town Benzene, LLC (K-Town), a commercial landlord, appeals from the trial court's judgment in favor of commercial tenant, DJHM Corporation (DJHM), in an unlawful detainer action. K-Town's sole argument on appeal is that the trial court erred by finding that K-Town did not properly serve a three-day notice to pay rent or quit on DJHM under the terms of the lease. We agree, and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Lease*

In June 2016, DJHM entered into a written lease agreement with K-Town's predecessor in interest to operate a gas station on the subject property, located at 3501 W. 3rd St. in the City of Los Angeles.[1] The lease originally extended to June 2022, and it provided an option to extend the term through June 2027, at certain fixed rental rates. Although the parties dispute the applicable lease terms and amounts due, on appeal the parties' dispute solely concerns the notice provisions of the lease.

Paragraph 23 of the lease, "Notices," governs delivery of notices in two subsections. In relevant part, paragraph 23.1, "Notice Requirements," provides: "All notices required or permitted by this Lease or applicable law shall be in writing and may be delivered in person (by hand or by courier) or may be sent by regular, certified or registered mail or U.S. Postal Service

---

[1]    The lease is a standard form lease prepared by "AIR Commercial Real Estate Association" and captioned "Standard Industrial/Commercial Single-Tenant Lease – Net."

Express Mail, with postage prepaid, or by facsimile transmission, and shall be deemed sufficiently given if served in a manner specified in this Paragraph 23." Paragraph 23.1 also identifies each party's "address for delivery or mailing of notices," including that "upon Lessee's taking possession of the Premises, the Premises shall constitute Lessee's address for notice."

Paragraph 23.2, "Date of Notice," provides in part: "Notices delivered by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed given 24 hours after delivery of the same to the Postal Service or courier."

B.    *Service of Three-Day Notice and Unlawful Detainer Action*

In December 2023, K-Town sent DJHM a "3 Business Day Notice to Pay Rent or Quit," notifying DJHM of K-Town's intent to initiate unlawful detainer proceedings if DJHM did not pay delinquent rent K-Town alleged was due.

The three-day notice was delivered to DJHM at 3501 W. 3rd St. on December 11, 2023, by FedEx First Overnight delivery.[2] The shipping date was Saturday, December 9, 2023, and the delivery date was Monday, December 11, 2023. The delivery was made to the front desk receptionist at 3501 W. 3rd St., and the FedEx delivery receipt indicates that a "J. Ahim" signed for the delivery. DJHM's Chief Financial Officer, Hyun Min Moon, testified he received the three-day notice from his secretary on or about December 11.

On January 22, 2024, K-Town filed a complaint for unlawful detainer alleging nonpayment of rent against DJHM. A

---

[2]    The same individual who sent the FedEx notice on behalf of K-Town also posted a copy of the notice on the front door of the property on December 9, 2023.

one-day bench trial was held on April 22, 2024, with testimony taken regarding service of the three-day notice and on the merits of the parties' dispute. The trial court concluded the use of FedEx rendered service of the notice defective, denied K-Town's request to brief the issues of whether FedEx was a courier and whether the three-day notice was validly served, and ruled in favor of DJHM on the basis of invalid service of the notice. Judgment for DJHM was entered on June 7, 2024.

K-Town filed a motion for new trial, arguing that the three-day notice "was delivered in person, by hand, and by a courier." DJHM opposed, arguing that because "the Fed-Ex delivery was made to the receptionist/front desk and not directly to the registered agent for the service of process" for DJHM, "there was no personal delivery effectuated," and "Fed-Ex overnight service was not specified as one of the allowed methods of delivery" in paragraph 23.1.

At the hearing on the motion for new trial, K-Town argued there was no requirement under the lease or in the unlawful detainer statutes to serve notice on the registered agent for service of process, and that the three-day notice was delivered in person to the property address as required under the lease, and signed for by the receptionist. DJHM argued the lease required delivery "in person," which means "personal delivery versus substitute service." K-Town argued the lease requirement that notice be delivered "in person" is not the same thing as statutory "personal service" of process.

After hearing argument, the trial court denied the motion for new trial. The court determined that K-Town had not shown there was insufficient evidence supporting the court's finding that the notice was defectively served. In its written order, the

4

court ruled it "did not find that service by FedEx delivery on the receptionist satisfied the requirements of Paragraph 23.1 of the lease agreement." The court further stated in its written ruling: "Here, FedEx overnight delivery was made to the receptionist, and not directly to the registered agent for the service of process for Defendant, DJHM Corporation."

K-Town timely appealed. (Cal. Rules of Court, rule 8.108(b) [time to appeal from the judgment extended for 30 days after denial of motion for new trial].) The order denying the motion for new trial " 'is reviewable on appeal from the underlying judgment.' " (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 669, fn. 3; accord, *Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19.)

K-Town proceeded on appeal by certified settled statement of the trial because no reporter was present for the bench trial. The hearing on the motion for new trial was reported, and those transcripts provided on appeal.

## DISCUSSION

A.    *Governing Law and Standard of Review*

"According to the statutes governing unlawful detainer proceedings, ' "a tenant is entitled to a three-day notice to pay rent or quit which may be enforced by summary legal proceedings (Code Civ. Proc., § 1161) but this notice is valid and enforceable only if the lessor strictly complies with the specifically described notice conditions." ' "[3]  (*Palm Property Investments, LLC v. Yadegar* (2011) 194 Cal.App.4th 1419, 1425 (*Palm Property*); accord, *Kwok v. Bergren* (1982) 130 Cal.App.3d 596, 600; *Lamey v. Masciotra* (1969) 273 Cal.App.2d 709, 712-713.)  "Stated another way, '[p]roper service on the lessee of a valid three-day notice to pay rent or quit is an essential prerequisite to a judgment declaring a lessor's right to possession under section 1161, subdivision 2.' . . . 'Absent evidence the requisite notice was properly served . . . , no judgment for possession can be obtained.' " (*Palm Property,* at p. 1425; accord, *Liebovich v. Shahrokhkhany* (1997) 56 Cal.App.4th 511, 513.)

Although service of a three-day notice on commercial tenants is generally governed by section 1162, subdivision (b), "[i]n commercial leases the landlord and commercial tenant may lawfully agree to notice procedures that differ from those provided in the statutory provisions governing unlawful detainer. [Citations.]  Thus, if the lease contains service requirements for the notice to quit at variance with the requirements in the

---

[3]    Undesignated statutory references are to the Code of Civil Procedure.

6

unlawful detainer statutes, the lease provisions control."[4] (*Culver Center Partners East #1, L.P. v. Baja Fresh Westlake Village, Inc.* (2010) 185 Cal.App.4th 744, 750 (*Culver Center*).) The parties agree the notice procedures here are governed by the terms of the lease.

" 'We apply de novo review to questions of law regarding statutory interpretation.  [Citation.]  "We also independently review contractual agreements, including the question of whether the language used in a contract is ambiguous." '  [Citations.]" (*KB Salt Lake III, LLC v. Fitness Internat., LLC* (2023) 95 Cal.App.5th 1032, 1046 (*KB Salt Lake III*) [interpreting language of commercial lease contract].)

In interpreting a contract, " '[i]f contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs.' " (*Wind Dancer Production Group v. Walt Disney Pictures* (2017) 10 Cal.App.5th 56, 69 (*Wind Dancer*); see Civ. Code, § 1638.)  "We ascertain ' "the intent and scope of [an]

---

[4]    Section 1162, subdivision (b) provides:  "The notices required by Section 1161 may be served upon a commercial tenant by any of the following methods:  ¶  (1) By delivering a copy to the tenant personally.  ¶  (2) If he or she is absent from the commercial rental property, by leaving a copy with some person of suitable age and discretion at the property, and sending a copy through the mail addressed to the tenant at the address where the property is situated.  ¶  (3) If, at the time of attempted service, a person of suitable age or discretion is not found at the rental property through the exercise of reasonable diligence, then by affixing a copy in a conspicuous place on the property, and also sending a copy through the mail addressed to the tenant at the address where the property is situated.  Service upon a subtenant may be made in the same manner."

7

agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made." ' " (*Wind Dancer,* at p. 69; see *Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 651-652 [" 'Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms.' "].)  In so doing, " '[w]e consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual language in isolation.' " (*Wind Dancer,* at p. 69; see Civ. Code, § 1641.)  We will not give words "an unreasonable interpretation" to deem contract terms ambiguous.  (*KB Salt Lake III, supra,* 95 Cal.App.5th at p. 1051; see *La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 37 [" 'Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists.' "].)

B.      *The Three-Day Notice Was Delivered in Accordance with the Lease Terms*

Paragraph 23.1 of the lease specifies three authorized methods to deliver written notices: (1) "in person (by hand or by courier)," (2) "sent by regular, certified or registered mail or U.S. Postal Service Express Mail, with postage prepaid," or (3) "by facsimile transmission."

K-Town argues service of the three-day notice by FedEx overnight delivery constituted in-person delivery by courier and by hand, or, alternatively, mail delivery under the lease.  DJHM argues the delivery was not "in person," and that FedEx overnight delivery is neither "regular" mail, "certified" mail, "registered" mail, nor "U.S. Postal Service Express Mail," thus it

8

was not an allowed method of service.[5]  We conclude K-Town is correct.

First, the plain language of the lease specifies that notice may be "delivered . . . in person (by hand or by courier)" to the "address for delivery or mailing of notices."  The parties do not dispute that the notice was delivered by a FedEx employee to the front desk receptionist at the property address, and that the receptionist signed for the delivery.  Delivery was not, for example, to a mailbox.  Thus, the notice was delivered by a person (the FedEx employee) to a person (the receptionist) at the designated address for delivery of notices under the lease.  DJHM does not explain why this is not "in person" delivery.[6]  We conclude that such person-to-person delivery, consisting of an undisputed physical handoff between the FedEx employee and the recipient with a signed delivery receipt, satisfies the ordinary and usual meaning of delivery "in person."

Next, under the ordinary and usual meaning of the term "courier," FedEx and its delivery employees are plainly within the term "courier" as used in paragraph 23.1 because they are engaged in the business of delivering documents and packages. Black's Law Dictionary defines a "courier" as "[a] messenger, esp.

_____

[5]  The parties do not dispute that DJHM had actual notice. However, actual receipt of the three-day notice would not cure a deficiency under the lease specifications for service, which are strictly construed.  (See *Culver Center, supra,* 185 Cal.App.4th at p. 752 ["Nothing in the parties' lease suggests actual receipt of a notice to quit results in the waiver or forfeiture of [tenant]'s right to service accomplished in the manner prescribed."].)

[6]  We address below DJHM's argument that the lease's use of "in person" means delivery in the same manner as for personal service of process.

9

a person or business employed to transport and deliver documents, correspondence, parcels, and other items." (Black's Law Dict. (12th ed. 2024) p. 444, col. 2.) Additionally, as described by the United States Supreme Court, "Federal Express Corporation (FedEx), provides mail pickup and delivery services to customers worldwide[,]" through a "courier network" of tens of thousands of delivery employees, known as "couriers." (*Fed. Express Corp. v. Holowecki* (2008) 552 U.S. 389, 393.) And the California Supreme Court has described FedEx as "a private courier company." (*Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 138, fn. 7.)

DJHM contends that paragraph 23.1 does not specifically include "express delivery services," such as FedEx. It also argues that the "simple mention of 'overnight courier' in Paragraph 23.2 of the lease agreement does not alter or expand the expressly stated means of delivery set forth in Paragraph 23.1." Paragraph 23.2 governs the "Date of Notice," and it provides that: "Notices delivered by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed given 24 hours after delivery of the same to the Postal Service or courier." This language supports K-Town rather than DJHM. That is because it contemplates that delivery of notices by a "courier" may occur in the form of a guaranteed overnight delivery service, such as FedEx First Overnight delivery. At most, DJHM's argument highlights a potential ambiguity in the parties' agreement, which we resolve by interpreting the term "courier" consistently in both subsections of paragraph 23. (See *E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 475 ["Accepting Zurich's interpretation would require that we

10

give different meanings to the same term used in the same [contract] paragraph. This would run afoul of the rule of contract interpretation that the same word used in an instrument is generally given the same meaning unless the [contract] indicates otherwise"].) Accordingly, we are not persuaded by DJHM's argument that, because FedEx was not expressly named in the lease, it is somehow excluded from the term "courier" as used in paragraph 23.1 of the lease.

DJHM next argues the "key issue" is that FedEx did not provide "in person" service of the notice. In its view, "in person" service must be effectuated in the same manner as personal service of process. But DJHM does not cite any personal service requirements it claims should apply, or any authority for the proposition that we should interpret in person delivery of notice under the terms of the lease in the same manner as personal service of process. The lease nowhere mentions or incorporates the statutory requirements for personal service of process. Nor do the statutory requirements for personal service of process apply to service of a three-day notice on a commercial tenant under the unlawful detainer statutes. (See § 1162, subd. (b) [notice is properly served by "delivering a copy to the tenant personally," leaving a copy with a suitable person at the property and mailing a copy, or posting a copy on the property and mailing a copy].) And service of a three-day notice to pay rent or quit before bringing an unlawful detainer action is not the same as service of process in a pending action. (See generally § 416.10 [governing service of process upon corporations]; *Volkswagenwerk AG v. Schlunk* (1988) 486 U.S. 694, 700 ["[T]he term 'service of process' has a well-established technical meaning. Service of process refers to a formal delivery of documents that is legally

11

sufficient to charge the defendant with notice of a pending action."].)

Finally, contrary to DJHM's argument, the lease contains no requirement that notice under the lease be served on the registered agent for service of process for DJHM, or on a specific corporate officer. Rather, the lease expressly provides that delivery of a notice "shall be deemed sufficiently given if served in a manner specified" in paragraph 23. We conclude the three-day notice was properly served in person by courier, under the terms of the lease.

Because we conclude the FedEx delivery to the receptionist constituted valid in person delivery of the three-day notice, we do need not reach K-Town's remaining arguments.[7]

---

[7] DJHM states there are alternative reasons to affirm the judgment on the merits even if notice was properly served (e.g., overstated rent due in the notice), but it does not present any argument for why we should affirm on any of these alternative grounds. DJHM has forfeited any argument the judgment may be affirmed on other grounds. (*Estrada v. Public Employees Retirement System* (2023) 95 Cal.App.5th 870, 889 ["As a general rule, ' "[w]hen an appellant raises an issue 'but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited].' " ' "].)

Because the record before us reflects the trial court did not reach the merits of the unlawful detainer action in its rulings, the record is also insufficient for us to remand with instructions to enter judgment in K-Town's favor, as K-Town requests. The trial court's judgment in favor of DJHM and its denial of the motion for new trial were both based solely on the inadequacy of the notice. Although the trial court heard merits testimony and

## DISPOSITION

The judgment is reversed and the case is remanded for a new trial to determine the merits of the unlawful detainer action. K-Town may recover its costs on appeal.


MARTINEZ, P. J.

We concur:



SEGAL, J.



FEUER, J.

---

arguments, the only stated ground for the judgment is that the trial court "ruled in favor of the Defendant based on defective service of the Notice." At the hearing on the motion for new trial, the trial court mentioned there were other reasons it could have ruled for DJHM, but stated those issues were "not being addressed because the court did rely on the notice." At the end of that hearing, K-Town's counsel asked if the court wanted argument on any other issues, and the court confirmed it was basing its decision on the notice issue and did not need counsel to address any other points.

13